**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI**

BRAD JACKSON

               Plaintiff,

v.

 CITY OF MAPLEWOOD, et Al.

               Defendant.

Case No. 4:24-cv-01207

**Jury Trial Demanded**

## FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Brad Jackson, by and through his undersigned attorney, and for his Petition states as follows:

1.     Plaintiff Brad Jackson ("Jackson") is a resident of St. Louis County, State of Missouri.

2.     Defendant City of Maplewood is a Missouri constitutional charter city established pursuant to article VI, section 19(a) of the Missouri constitution.

3.     Defendant Barry Greenberg ("Greenberg") is the present mayor of Maplewood. Greenberg is sued both in his personal and official capacity, as described below.

4.     Defendant Kate Bethel ("Bethel") is a resident of St. Louis County, State of Missouri.

5.     Defendant Issac Chosich ("Chosich") is a resident of St. Louis County, State of Missouri.

6.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1), (b)(2), and (c)

because all defendants reside in Missouri.[1]

7.     The court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) because Plaintiff Jackson asserts a civil action pursuant to 42 U.S.C. § 1983 for deprivation of constitutional rights protected by the First and Fourteenth Amendment.

### City of Maplewood Government Structure

8.     As a constitutional charter city, the City of Maplewood possesses all powers which are not limited or denied by the Missouri constitution, a Missouri statute, or the powers contained in the cities charter.[2]

9.     The Maplewood City Charter ("Charter") exercises the maximum delegation of powers by the Missouri constitution to a municipal government.[3]

10.     The Charter authorizes the creation of a six person Council comprised of the elected senior and junior alderman of each of three city wards and the Mayor. The Charter states that *"[e]xcept as this Charter provides otherwise*, all powers of the city shall be vested in the council." (Emphasis mine).

11.     The Council is governed by a Council members[4] Code of Ethics that prohibits *inter alia* Council members from "[c]ausing citizens or employees to be

---

[2] *Zang v. City of St. Charles*, 659 S.W.3d 327, 331 (Mo. 2023).

[3] "The city shall have all powers which the General Assembly of the State of Missouri has authority to confer upon any city, provided such powers are consistent with the Constitution of this state and are not limited or denied either by this Charter or by statute. The city shall, in addition to its home rule powers, have all powers conferred by law. It is specifically intended that this Charter include among the city powers all powers that may be necessary to further the purposes of Section 82.240 of the Missouri Revised Statutes (RSMo 82.240)." Maplewood City Charter Art. II § 2.1.

[4] The Mayor is also a Council Member.

threatened, badgered, harassed, and the like in such a manner as to the convey the impression that such conduct is the action of the city council or an elected official" ("Council Ethics Code").[5]

12.    The Mayor of Maplewood is elected for a term of four years.

13.    The Charter provides that the Mayor "*[s]hall* have the following powers and duties: … [s]ee that all laws, provisions of the Charter and acts of the council, subject to enforcement by him or by officers subject to his direction and supervision, are faithfully executed."[6] (Emphasis mine).

14.    By bill 6241 adopted on February 27, 2024 the City of Maplewood adopted the "Board and Commission Member Code of Ethics"[7] ("Commission Ethics Code").

15.    The Commission Ethics Code provides that "[a]ny person may file a written complaint alleging a violation of this Code of Ethics within 30 days of the alleged violation."[8]

16.    The Commission Ethics Code indicates that complaints made pursuant to the same shall be submitted to the Mayor, and charges the Mayor to upon receipt investigate the complaint by assembling an ethics review committee.

---

[5] Maplewood City Charter, Art. II, Div. 2 § 2-44.
[6] Maplewood City Charter Art. IV § 4.4(c). (Emphasis mine).
[7] Available at
https://cms7files1.revize.com/cityofmaplewoodmo/Document_center/Government/Board%20&%20Commissions/City%20of%20Maplewood%20Board%20and%20Commission%20Code%20of%20Ethics.pdf
[8] *Id.* at 1, ¶ 1.

17.    The Commission Ethics Code provides for meting out discipline in the event that a Commission Member is found to have violated the Code. The Commission Ethics Code provides for an appeal to the City Council.

18.    Although the mayor is nominally restricted from participating in debates at the first stage of the ethics review process, he sits on the Council that hears any appeals from the initial investigation. As a matter of policy and practice, the mayor has substantial influence and control over the actions, findings and punishments (if any) meted out by the initial investigatory body.

19.    In particular, in this matter the Mayor specifically authored the complaint at issue in order to create a record that would "…result in [Jackson's] removal from service on any City board or commission, if not further legal action."

20.    Likewise, in the process of reviewing the ethics complaint brought against the mayor, in spite of nominal restrictions in the city charter on his involvement Defendant Greenberg prohibited another council member – Nick Homa – from having any involvement in the process.

21.    The Commission Ethics Code is "subject to enforcement" by the Mayor of Maplewood.

### Jackson and Bethel Owned Competing Storefronts

22.    In March 2016, Jackson opened a storefront located at 7282 Manchester Road for his company Roughneck Grooming and Beard Co. The company sold men's grooming products.

23.    At the same time, Defendant Bethel had a business two doors down called Maven Candles and Soaps.

24.    When Roughneck opened, Maven was selling a competing beard grooming product that was for oiling of the beards.

25.    The competing businesses owned by Plaintiff Jackson and Defendant Bethel resulted in progressively amplifying acrimony over the subsequent 3 years. Bethel believed and alleged that Jackson had stolen proprietary business information from Bethel and was using the same to unfairly compete with her.

26.    In mid 2020, Jackson started campaigning for then mayoral candidate Nikylan Knapper. His campaign involved volunteering for the campaign, canvassing, and the like.

27.    During the course of the 2020 mayoral campaign, Defendant Greenberg utilized a Facebook account that was titled "Barry Greenberg, Mayor of Maplewood." At this time, Greenberg was indeed the mayor of Maplewood. Greenberg began posting publicly from the platform accusing Jackson of fabricating screenshots and other evidence that was being used to portray Greenberg in a negative light.

28.    Greenberg's posts generally concerned an allegation by one of his supporters that Plaintiff Jackson was making threats towards. However, that allegation was false and Greenberg subsequently called Jackson to apologize.

29.    At the same time, and throughout the 2020 election campaign, Defendant Bethel would like, share and comment on Greenberg's posts affirming Greenberg's accusations and posting additional information about Jackson to

discredit him. Bethel's posts would generally entail accusations that Jackson's Roughneck Beard Supplies was operating without a business license, stole Bethel's business recipes and products, and was dishonest.

30.    At the same time, an anonymous campaign of letters began that was directed against Plaintiff Jackson. The campaign involved mailing letters without a return address to a number of Maplewood city residents. The city residents were chosen as a result of their relationship to Jackson or his business, including former customers, friends and family members. The letters were generally typed, and included information about Jackson being a drug dealer during the year 2020, Jackson beat his wife, Jackson had various mental health disturbances, that Jackson was a male prostitute, and various other unsubstantiated allegations. The campaign of letters continues to the present day. Letters went to Jackson's parents, parents of children in Jackson's children's classes, teachers for Jackson's children, Jackson's landlord, former and long term customers, and more.

31.    Upon information and belief, Defendant Bethel and Defendant Greenberg had a meeting wherein they discussed embarking upon the campaign of anonymous letters. Defendant Bethel provided information about the individuals. Defendant Greenburg supervised the drafting of the letters and the campaign.

32.    Initially, the letters were only type written narratives purporting to describe bad conduct that Jackson had been involved. For example, one such letter suggested that all of Jackson's employees were "criminals" and that his beard shop was a front for an alleged cocaine dealing operation. That allegation is false.

33.    The initial campaign of letters stopped promptly after the election of Knapper in April of '21.

34.    Later, and leading up to the mayoral election in April of '24, the campaign resumed. Some of the content of the later letters was derived from Chosich's private conversations with Jackson. Defendant Chosich adopted selected portions of the conversations, and then added annotations that portrayed the conduct in a far different light than the reality.

35.    But some of the content for the later letters was private messages with individuals other than Chosich. For instance, Jackson was romantically involved with an employee at his business and sent her a private message about sleeping with her after work, to which she replied with a laugh. One anonymous letter contained that message despite it being private between Jackson and the woman., The letter added an annotation suggesting that Jackson had sexually assaulted the woman – which was false.

36.    Knapper won the mayoral election in 2021 and unseated Greenberg. Knepper appointed Jackson to the sustainability commission shortly after she prevailed in April of '21, and in April of '22 was appointed to be a commissioner on the Maplewood Planning and Zoning Commission.

37.    The appointment to the planning and zoning commission was to last until 2026.

## Jackson's protected online speech

38.     In July of '21, an individual reported to Jackson that a mutual friend – called here Jakob Baxter had sexually assaulted John Doe 1.[9]

39.     In the allegation, Victim 1 reported that Jakob Baxter had taken Victim 1 to a bar when he was 15. At the bar, Accomplice 1 got John Doe 1 drunk and gave him cocaine. Baxter took John Doe 1 upstairs and then sexually assaulted him.

40.     Although Jackson urged John Doe 1 to go to the police, they did not do so.

41.     In 2021, Defendant Chosich was Jackson's band. Chosich was also in Baxter's band. Jackson told Chosich about the allegation against Baxter upon learning that Chosich was also in his band.

42.     As word got back to Baxter about Jackson's receipt of the complaint of John Doe 1, and his relating of the same to Defendant Chosich, fans of Baxter's band began harassing Jackson, alleging that the complaints were false and that Jackson was spreading the rumors because of an alleged prejudice against homosexual people.

43.     In response to the allegations by Baxter's fans that Jackson had made false allegations against Baxter, on September 8, 2023, Brad Jackson made a Facebook post stating among other things that Jakob Baxter had "groomed and sexually assaulted" a number of young musicians in the St. Louis community.

**<u>Upon Reelection, Greenberg Uses the September Post to Punish
Jackson for Political Opposition to Greenberg</u>**

---

[9] Plaintiff will provide to the Court and Defendants pursuant to a protective order names and evidence of these complaints.

44.     Jackson supported the re-election of Knapper during the '24 Maplewood mayoral election in the same manner as described above.

45.     During the run up to the election, the campaign of anonymous letters intensified, as described above.

46.     Also during the campaign preceding the mayoral and city council elections in November of 2023, Jackson filed an ethics complaint against Greenburg ally Chasity Maddox. The substance of that complaint was that Maddox had made a Facebook post from her re-election campaign account stating that Jackson had made a sexual advance against her, which was untrue.

47.     Following Maddox' electoral victory in November of '23, and Greenberg's in April 2024, the City Council created the Commissioner Ethics Code that ultimately resulted in the ethics complaint made by Greenberg against Jackson.

48.     To punish Jackson for his support of Knapper, and in retaliation for his complaint against Maddox, Defendant Greenberg wrote an ethics complaint pursuant to the Committee Ethics Code against Jackson.

49.     Because his enforcement of the Committee Ethics Code might create the appearance of a conflict of interest or, Greenberg directed Defendant Bethel to submit and sign the complaint as her own. Greenberg specifically acknowledged in his email to Bethel containing the explicit complaint that it was designed to get Jackson removed from his committee appointment. But, the context of the complaint makes clear that Defendant Greenberg was motivated by a desire to punish Jackson for

campaigning for Knapper, for Jackson's complaint against Maddox, and other complaints about Jackson's protected speech.

50.    Greenberg falsely represented to the ethics committee – which he is charged to oversee – that the complaint was written by Defendant Bethel. Although the Commissioner Ethics Committee directed Greenberg to abstain from the process, Greenberg used his position as mayor to interfere with it by releasing the information to Bethel and Chosich.

51.    The Commissioner Ethics Committee also implicitly acknowledged that the mayor would typically be involved in and supervise their review process by telling Defendant should not be involved. But plainly he was – Greenberg was copied on all emails involving the deliberation of the committee, and Greenberg sat on the full council that would review the findings should they be adverse to Jackson.

52.    The complaint made against Jackson alleged that Jackson had falsely accused Baxter of sexually assaulting as many as 11 underage boys. Jackson did in fact make that allegation in a post on September 8, 2023. But, Jackson supplied a number of redacted private messages from individuals that provided some corroboration for the allegations.

53.    In response, Jackson submitted materials on May 9 to the ethics commission that substantiated his allegation, including with written messages from the purported victims directed to Jackson.

54.    Upon receipt of those materials and on the same day, Defendant Greenberg forwarded them to Defendant Bethel. Defendant Bethel then downloaded the file, and forwarded it to Defendant Chosich.

55.    Defendant Chosich then posted all of the materials online in a Facebook post on May 10th that chastised Jackson for contending that he had a First Amendment to make the September 8 post, that the conversations didn't rise to the level of "proof" because they were not made to the police, and that Jackson again had falsified the allegation.

56.    Also on May 10, the ethics committee dismissed the complaint against Jackson.

57.    On June 4, Jackson filed an ethics complaint against Defendant Greenberg alleging *inter alia* that Greenberg had violated the City Charter by "[c]ausing citizens or employees to be threatened, badgered, harassed, and the like in such a manner as to the convey the impression that such conduct is the action of the city council or an elected official" ("Council Ethics Code").[10] Jackson also alleged that Defendant Greenberg had interfered with city functions pursuant to subsection 6.[11]

58.    Jackson further alleged that Defendant Greenberg had performed the actions at issue with express aim of retaliating against Jackson for his exercise of his First Amendment rights.

59.    Jackson's complaint was submitted to the deputy mayor, and heard before a consolidated, private and special session of the City Council. The City

---

[10] Maplewood City Charter, Art. II, Div. 2 § 2-44(4)-(6).
[11] Maplewood City Charter, Art. II, Div. 2 § 2-44(4)-(6).x

Council heard the evidence, but as of the date of the filing of this First Amended Complaint, has not ruled.

60.    The City Council has intentionally not ruled on Jackson's complaint in order to prevent this Court from reviewing the conduct of the mayor in this matter. By failing to rule, the Council has ratified the conduct of Defendant Greenberg. In particular, if the City Council rules that Defendant Greenberg did violate the Council Ethics Code by filing the complaint against Jackson, that would also be an admission that his conduct was unlawful and subject them to potential liability. If the City Council rules that Defendant Greenberg did not violate the Council Ethics Code, they have explicitly ratified the action. By failing to rule either way, the City Council must be presumed to have adopted the position that Defendant Greenberg's actions were consistent with the policy of the City of Maplewood.

61.    Defendant Greenberg for his part after the filing of the ethics complaint demonstrated his control or ability to control the city council ruling on the ethics complaint by brazenly and without cause investigating and proffering suggestions to the Maplewood City Attorney about charges that might be drummed up against Jackson. In particular, Greenberg told Bethel that he intended to "speak with our municipal judge and prosecutor to look at municipal charges which are punishable by a $1,000.00 fine or three months in jail." Greenberg's motivation was that by putting Jackson in jail, he could not litigate his case.

62.    Likewise, the Maplewood Police arrested Jackson, and provided advance notice of their intent to do the same to Defendant Greenberg, Defendant Bethel and

Defendant Chosich so that it could be filmed. On or around June 21, 2024, Plaintiff Jackson was pulled over on Sutton for having expired tags. The police officer pulled directly behind Jackson on Manchester and directed out his window with his hand to turn left onto Sutton. He was then directed by the officer to pull over directly in front of Barry Greenberg's old architectural firm. Waiting there was Barry Greenberg, Issac Chosich, and Kate Bethel, waiting with a camera in hand to film the arrest.

## COUNT 1: FIRST AMENDMENT RETALIATION – 42 U.S.C. § 1983

COMES NOW Plaintiff, Brad Jackson, and for his claim of deprivation of constitutional right under color of law against Defendant City of Maplewood and Defendant Barry Greenberg in both his personal and official capacity as Mayor of Maplewood, states and alleges as follows:

63.  Plaintiff adopts and incorporates all preceding paragraphs of this complaint.

64.  Plaintiff engaged in constitutionally protected speech by making his September 8, 2023 Facebook post describing his understanding of the allegations against Jakob Baxter.

65.  The Maplewood City Charter delegates a ministerial duty to the Mayor to enforce the Maplewood Commissioner Ethics Code.

66.  Defendant Greenberg, in falsifying the complaint against Jackson to suggest it was not written by him, suggests himself that making the allegation was motivated by a desire to punish his political opponents. In particular, the Maplewood Commissioner Ethics Code provides that "any" person can make

such a complaint. Greenberg's decision to lie about the author of the complaint is an admission of his actual knowledge that doing so himself would be illegal.

67. Defendant City of Maplewood, in hearing the ethics complaint against the Mayor concerning the alleged retaliatory filing of the ethics complaint by the Mayor against Jackson, acknowledges that there is at minimum a colorable claim that the same happened.

68. By failing to disavow the actions of Jackson, the Maplewood City Council has ratified the policy and practice of Defendant Greenberg in utilizing the ethics complaint process as a bludgeon against the exercise of protected first amendment rights.

69. Pleading hypothetically or in the alternative, Defendant Greenberg had final policy making authority over the Maplewood Ethics Committee. The explicit language of the Commissioner Ethics Code bestows upon the mayor an affirmative duty to convene a committee to investigate allegations against a commissioner. The Mayor was CC'd on all internal communications regarding the complaint. The Mayor was able to unilaterally disseminate information provided to the committee without their knowledge. And, the cities failure to rule at all in the ethics complaint made by Jackson against the mayor suggests their ongoing efforts at manipulating the record so he escapes liability.

70. The conduct of the City of Maplewood following the submission of the ethics complaint by Jackson against the mayor further solidifies the claim that the

City of Maplewood has adopted the Defendant Greenberg's position that he may use the ethics code to attack opponents for protected conduct.

71. The content of Defendant Greenberg's ethics complaint against Jackson facially acknowledges that it was motivated by Plaintiff Jackson's September 8 Facebook post – the ethics complaint specifically alleges that Jackson violated the ethics code by making the post.

72. By ratifying the actions of Defendant Greenberg, Defendant City of Maplewood has condoned abuse of official power in a manner that would cause a reasonable person to refrain from engaging in protected First Amendment Speech.

73. The conduct of the City of Maplewood in coordinating to arrest Jackson for an expired license plate tag in front of Bethel, Chosich, and Greenberg at Greenberg's old architectural firm, and at a time when they would be waiting to film, suggests a use of the normal police power functions of municipal government to retaliate against Jackson's free speech rights. Knowledge of the same would deter a reasonable person from exercising First Amendment Rights.

WHEREFORE Plaintiff Jackson requests humbly that the Court enter judgement in his favor, and set the case for trial by jury to assess damages arising from the tortious conduct of all Defendants, and for any other relief as may be just and proper under the circumstances.

## COUNTS 2-7 DEFAMATION AGAINST CHOSICH

74.    Plaintiff adopts and incorporates all preceding paragraphs of this complaint.

75.    Defendant Chosich published the following statements:

| Chosich Statements | | | |
|---|---|---|---|
| Count | Statement | Date | Forum |
| 2, 3 | "I find it pretty wild and embarressing that a dude who doesn't have a job, doesn't pay taxes, doesn't pay rent, doesn't pay child support, and uses all of his free time to destroy people's lives on the internet gets to sit on two boards and make decisions regarding everyone." | 6-May-24 | Facebook |
| 4, 5 | "Crazy that Brad Jackson, a drug dealer, who sells drugs out of a bbq grill on his front porch, from the house he rents is on two city boards. Dude doesn't even pay taxes or have a real job. He sits in his basement on Facebook constantly stirring up bullshit, chain smoking cigarettes. I guess he's got some extra time on his hands for all this since he's raised enough money on go fund me for his Coke surgery." | 7-May-24 | Facebook |
| 6, 7 | [Brad Jackson is a] "40 year old dude that has nothing to do then slander other people to stay relevant and gaslight people into doing the dirty work for him. It's sad and straight mentally ill behavior. I'd say get help but I'd rather him fuckin' drop dead. If the law doesn't catch up with him the heart attack will." | 12-May-24 | Facebook |

76.    The above described statements are false.

77.    Chosich made the above described statements with knowledge that they are false, or with reckless disregard for the truth or falsity of the statements.

78.    Pleading hypothetically or in the alternative pursuant to Rule 8, the above-described statements made by Chosich were made with the intention of causing emotional distress to Plaintiff Jackson.

79.    The above-described statements were extreme and outrageous.

80.    The above-described statements were made with the express intention to harm Jackson and his reputation and to inflict emotional suffering upon him. As a result of the same, Jackson has suffered significant economic repercussions, including but not limited to the loss of the store front for his business and diminished sales and employability.

81.    Chosich made the above-described statements with the intention to harm Plaintiff Jackson.

WHEREFORE Plaintiff Jackson requests humbly that the Court enter judgement in his favor, and set the case for trial by jury to assess damages arising from the tortious conduct of all Defendants, and for any other relief as may be just and proper under the circumstances.

## COUNTS 8 and 9: DEFAMATION AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDAT BETHEL

COMES NOW Plaintiff Jackson, by and through his undersigned attorney, and for his claim for defamation against Defendant Bethel, states and alleges as follows:

82.    Plaintiff adopts and restates all paragraphs of this First Amended Complaint here again.

83.    On June 4, 2024 Defendant Bethel published this statement: "[Jackson] did run for the school board, but was kicked off/disqualified because he was delinquent on his taxes."

84.    That statement is false.

85.    On June 12, 2024 – immediately after Jackson was arrested for failing to renew his license plate tags – Bethel made a Facebook post celebrating and publicizing his arrest with a pre-manufactured set of candles suggesting that Jackson had been thrown in the trash. She offered the candles for sale.

86.    In the same posting, she replied to comments stating that Jackson had been convicted of tax fraud, failed to obtain a business license or pay taxes leading to the closure of his store, had committed wire fraud, had sexually harassed a city counsel member, had abused animals and was a cocaine dealer. She further invited other individuals to send her private messages so that she could relate in more detail false facts about Plaintiff Jackson.

87.    Pleading hypothetically or in the alternative pursuant to Rule 8, the above-described statements made by Bethel were made with the intention of causing emotional distress to Plaintiff Jackson.

88.    The above-described statements were extreme and outrageous.

89.    Each of those statements is false.

90.    The above described statements were made by Defendant Bethel with actual knowledge that the statements were false, or in the alternative, with reckless disregard for their truth or falsity.

91.    As a result of the forgoing statement, Plaintiff Jackson suffered reputational harm and economic damages. Plaintiff Jackson has been injured as a result of the above described statement prevented from obtaining new clients and business for his beard supply company. Plaintiff Jackson has suffered emotional distress as a result of the above described statements. Plaintiff Jackson has been defamed to among others his children's teachers, clients to his business, patrons of his band, and the entire Maplewood electorate.

92.    Defendant Bethel continues to this day to make posts threatening and harassing Plaintiff Jackson.

WHEREFORE Plaintiff Jackson requests humbly that the Court enter judgement in his favor, and set the case for trial by jury to assess damages arising from the tortious conduct of all Defendants, and for any other relief as may be just and proper under the circumstances.

## COUNT 10: CONSPIRACY TO DEPRIVE PLAINTIFF OF CONSTITUTIONAL RIGHTS PURSUANT TO 42 U.S.C. § 1985(3)

COMES NOW Plaintiff, by and through his undersigned attorney, and for his cause of action pursuant to 42 U.S.C. § 1985, alleges as follows:

93.    Plaintiff adopts and restates the above describe allegations here again.

94.    Defendant Bethel and Defendant Greenberg had an explicit agreement and coordinated strategy during the 2020 mayoral campaign to use both the official Maplewood mayoral page of Defendant Greenberg to attack Jackson for his support of Knapper.

95.    In particular, Greenberg used the page to post disparaging and false remarks about Plaintiff Jackson in the context of Jackson's support for Knapper.

96.    Bethel used her own page and her knowledge of Jackson's business to direct and develop an anonymous campaign of letters with the express advice and direction of Defendant Greenberg.

97.    After the mayoral campaign, the letters subsided until the subsequent mayoral race in 2023.

98.    For the second campaign, Chosich became involved. Chosich added to the campaign text messages and private information he had obtained from Plaintiff Jackson.

99.    Greenberg made an explicit agreement with Bethel to file a false ethics complaint against Plaintiff for his September 8 Facebook post wherein Greenberg wrote the complaint, and Bethel acted as if she did.

100.    Following the filing of his ethics complaint against Greenberg, and continuing until the present, Greenberg has conveyed to Bethel and members of the City of Maplewood governemtn, including city council members and police officers, his desire to punish Jackson for filing the complaint.

101.    Jackson's arrest on June 12 demonstrates a coordinated effort by Greenberg, Bethel, Chosich and the Maplewood police department to use the levers of state power to attack political enemies.

102.    Such coordinated, longstanding and unusually cunning action between all Defendants would chill an ordinary person from exercising their first amendment rights.


Respectfully submitted,

**OTT LAW FIRM, LLC**

BY: ___*/s/ Joseph Ott*_____
Joseph A. Ott            #67889
Mark E. Blankenship, #73123
3544 Oxford Avenue
Maplewood, Missouri 63143
Telephone: (314) 293-3756
Facsimile: (314) 689-0080
Email: joe@ott.law

*Attorneys for Plaintiff*