### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| BRAD JACKSON<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF MAPLEWOOD, et Al.<br><br>    Defendant. | Case No. 4:24-cv-01207 |

### MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Defendant City of Maplewood's ("Maplewood") Motion to Dismiss should be **denied** because Plaintiff Brad Jackson's ("Jackson") First Amended Complaint asserts facts demonstrating that Maplewood tacitly authorized Defendant Greenberg's ("Greenberg" or "Mayor Greenberg") use of the city ethics code as a tool to punish his political opponents. Likewise, Maplewood's arguments regarding the retaliatory arrest claim ignore the *Nieves* holding that an arrest for an offense similarly situated persons would not be subject to supports a claim.[1]

---

[1] ("[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions ... for speaking out," *quoting Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006)); *Hoyland v. McMenomy*, 869 F.3d 644, 655 (8th Cir. 2017), **overruled as to causation element by *Nieves v. Bartlett*, ⸺ U.S. ⸺, 139 S. Ct. 1715, 1722, 204 L.Ed.2d 1 (2019)**, *as recognized by Laney v. City of St. Louis*, 56 F.4th 1153, 1157 n.2 (8th Cir. 2023); *Molina v. City of St. Louis, Missouri*, 59 F.4th 334, 345 (8th Cir. 2023), cert. denied sub nom. *Molina v. Book*, 144 S. Ct. 1000, 218 L. Ed. 2d 20 (2024)) (Emphasis my own.)

Finally, Plaintiff's claims pursuant to 42 U.S.C. § 1985(3) fall squarely within the exception to the rule that § 1985(3) does not provide a remedy for First Amendment violations established by *United Brotherhood of Carpenters.*[2]

1. <u>Plaintiff has shown a sufficient basis to conclude under Missouri state law that Mayor Greenberg had final policy making authority over the ethics investigation into Plaintiff Jackson.</u>

Municipal liability under § 1983 attaches when a municipal official possessing final authority with respect to the action makes "a deliberate choice to follow a course of action ... from among various alternatives."[3] The identification of final policymakers is a question of law to be decided before a case is submitted to the jury; ratification is a question of fact for the jury.[4] Thus a single decision by a municipal official can constitute official policy.[5] But "liability attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered."[6]

District courts should consult two sources to identify the final policymaker: "(1) 'state and local positive law' and (2) state and local 'custom or usage having the force

---

[2] *United Broth. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 833, 103 S. Ct. 3352, 3358, 77 L. Ed. 2d 1049 (1983). ("Instead, we upheld the application of § 1985(3) to private conspiracies aimed at interfering with rights constitutionally protected against private, as well as official, encroachment.")
[3] *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 946 (8th Cir. 2017) (quotation omitted).
[4] *Soltesz*, 847 F.3d at 946-47.
[5] *Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016).
[6] Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).

of law."[7] State law, including valid local ordinances and regulations, will always direct the courts to some official or body of officials that has policymaking authority in a given area of the municipality's business.[8]

The City Charter at issue, on its face, provides that the mayor is the final policy maker for the ethics policy at issue. The Charter authorizes the creation of a six person Council comprised of the elected senior and junior alderman of each of three city wards and the Mayor. [Doc. 48 at 2, ¶ 10].[9] The Charter states that *"[e]xcept as this Charter provides otherwise,* all powers of the city shall be vested in the council."[10] (Emphasis my own). The Charter continues to provide that the Mayor "[s]hall have the following powers and duties: … [s]ee that all laws, provisions of the Charter and acts of the council, subject to enforcement by him or by officers subject to his direction and supervision, are faithfully executed."[11] [Doc. 48 at 2 ¶ 13].

The policy at issue – whether to enforce the City Ethics Code applicable to officials appointed to serve on commissions, like Jackson – is textually committed by to the discretion of Mayor Greenberg. "Complaints should be submitted to the Mayor, who will (upon receipt) assemble an ethics review committee for investigation of the complaint."[12] [Doc. 48 at 3, ¶ 16]. Although Defendant argues that the City of

---

[7] *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1215 (8th Cir. 2013). (Internal citations omitted).
[8] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).
[9] *See also* Maplewood City Charter, Art. II § 3.1.
[10] *Id.*
[11] *See also* Maplewood City Charter, Art. IV § 4.4(c).
[12] *See also* City of Maplewood Board and Commission Code of Ethics at 1-2, ¶ 1.

Maplewood Board and Commission Code of Ethics ("Commission Ethics Code") requires only a ministerial duty from the mayor to "accept and forward" a complaint to the ethics committee, the First Amended Complaint alleges that Mayor Greenberg authored the complaint at issue, and represented that it was written by Defendant Bethel, with the specific intent to punish Jackson for his political beliefs. [Doc. 48 at 4, ¶ 19]. The First Amended Complaint further alleges that Defendant Greenberg, as a matter of policy and practice, exerts substantial influence over the investigatory body that investigates such complaints. [Doc. 48 at 4, ¶ 18].

Greenberg's decision to file the complaint so that he could exercise the mandatory authority conveyed him by the City Charter is analogous to the actions of the prosecutor in *Kalina* that the Supreme Court found constituted actionable deprivation of constitutional rights under § 1983.[13] In *Kalina*, the Supreme Court held that a prosecutor, by placing false statements into an affidavit they executed in support of an application for an arrest warrant, was subject to liability under § 1983.[14]

The allegation here is that Greenberg authored a false ethics complaint to punish Jackson, his political opponent, for protected speech. Following *Kalina*, the Court in *Hutchcroft-Darling* found that a prosecutor had final policy making authority in the filing of a criminal complaint.[15] Because the procedure for filing a

---

[13] "No matter how brief or succinct it may be, the evidentiary component of an application for an arrest warrant is a distinct and essential predicate for a finding of probable cause." *Kalina v. Fletcher*, 522 U.S. 118, 130–31 (1997)(internal citations omitted).
[14] *Id.* at 118.
[15] *Hutchcroft-Darling v. Boecker*, 423 F. Supp. 3d 572, 585 (N.D. Iowa 2019).

complaint was not established by Iowa state law, the county there had discretion to determine its own procedure for the filing of a criminal complaint.[16]

Here, Greenberg is charged by the Maplewood City Charter to see that all laws "subject to enforcement" by him are faithfully executed. [Doc. 48 at 2 ¶ 13]. Because the ethics code can only be enforced by Greenberg, the decision to file an ethics complaint is squarely within the policy purview of the mayor. Even if the council could review the outcome of such investigation – just as a competent court can review the lawfulness of the filing of a criminal complaint – the decision to enforce the complaint itself was subject to the discretion of the mayor, because he was charged to oversee the investigation and insure that the Commissioner Ethics Code was "faithfully executed."

Likewise per *Kalina*, the fact that the Mayor's representations in the complaint are alleged to be false, and motivated by a desire to punish protected speech, transform his role from ministerial transmitter to witness. In effect the Mayor's actions establish that, pursuant to the policy of Maplewood, the Mayor can be both witness and enforcer of the ethics policy, and can use it at his whim to punish anyone that opposes him.

"A subordinate official possesses delegated final policymaking authority when that official acts (1) free of review and (2) without any constraints imposed as a matter of policy by the original policymaker."[17] The decision of the Mayor to create an ethics

---

[16] *Id.*
[17] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

complaint for Bethel to sign suggests that at minimum the Mayor views his obligation to take care that the law was faithfully executed created a conflict of interest for him if he were to author a complaint.

But there is no textual requirement for the same – the Commissioner Ethics Code merely indicates that the Mayor shall submit the complaint to investigative ethics committee that he creates upon receipt of such complaint. The Mayor's decision that he ought to have Bethel submit the complaint is additional evidence of his final policy making authority over the enforcement of the ethics complaint, because it demonstrates that he alone determines who is entitled to file such a complaint.

Contra Defendant's premise in their Motion to Dismiss that the fact that anyone can file a complaint supports the notion that the mayor is not a final policy maker for the ethics complaint process, *see* [Doc. 50 at 4 fn. 1], the Mayor has been alleged to have reached a final policy determination that **he could not do so**. He had discretion to make that determination because the Commissioner Ethics Code is ambiguous, in that it omits the charge from the Council Ethics Code that complaints about the Mayor should be submitted to the deputy mayor.[18]

This points unequivocally to the notion that the Mayor is the final policy maker with respect to his textual responsibility to "see that [the Commissioner Ethics Code is] faithfully executed."    In *Felts v. Green*, the Eighth Circuit analyzed whether the president of the Board of Alderman of St. Louis had final policy making authority

---

[18] City of Maplewood Code of Ordinances, Ch. 2, Art. II, §2-46(1). ("In the event the mayor is an involved party, the deputy mayor shall accept the written complaint.")

with respect to "his area of the city's business."[19] Because the President's decision in blocking the Plaintiff in *Felts* was not subject to review in the his use of social media, he was a final policy maker.[20] Likewise here, Greenberg was not subject to review in the discharge of his duty to "take care" that the policy was faithfully executed and that complaints were filed by the appropriate person.

2. <u>Even if Greenberg did not have final policy making authority, the actions of the Council in refusing to review the ethics complaint proffered by Jackson ratified the conduct of the mayor.</u>

The allegation relevant to this section is that the City of Maplewood was presented with an ethics' complaint about the Mayor's conduct in authoring the false ethics complaint, and that the City of Maplewood has intentionally refused to issue a ruling on the same to escape the Court's review of the conduct. [Doc. 48 at 11-2, ¶¶ 57-60].

A final policymaker ratifies the decision of a subordinate when he or she takes an affirmative act to approve both the decision and the basis for the decision.[21] "Accordingly, ratification requires both knowledge of the alleged constitutional violation, and proof that the policymaker specifically approved of the subordinate's act."[22] The issue of whether a final policymaker ratified a subordinate's decision is a

---

[19] *Felts v. Green*, 91 F.4th 938, 944 (8th Cir. 2024).
[20] *Id.*
[21] *Praprotnik*, supra, at 127.
[22] *Lytle v. Carl,* 382 F.3d 978, 988 n.2 (9th Cir. 2004); *see also Praprotnik* at 127.

question of fact for the jury to decide.[23] To succeed on this theory Jackson "must demonstrate that [the city's] decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision."[24]

    a.    *The City of Maplewood City Council has an affirmative obligation to rule on Jackson's complaint against the Mayor, so the failure to issue such ruling is an affirmative act.*

Again, the specific allegation here is that the City Council has <u>failed to act</u> on Jackson's ethics complaint against the Mayor regarding his use of the ethics code to punish Jackson for his political speech. The Maplewood City Charter places an affirmative obligation on the City Council to investigate and make conclusions on ethics complaints submitted against the mayor.[25] [Doc. 48 at 3 ¶ 11]. The Maplewood City Charter further <u>requires</u> the City Council to issue a recommendation:

> "The ethics review committee **shall** meet in closed sessions, review the facts, interview all persons related to the charges, and **issue** either a recommendation for dismissal of the charges or a recommendation of censure and the type of censure to be given."
>
> Maplewood Code of Ordinances, Ch. 2, Art. II, § 2-46(4). (Emphasis my own).[26]

---

[23] *Christie v. Iopa*, 176 F.3d 1231, 1238–39 (9th Cir. 1999); *see also Praprotnik* at 127.
[24] *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 411, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).
[25] Maplewood Code of Ordinances, Ch. 2, Art. 2, § 2-44 (Prohibited acts or conduct constituting violations).
[26] It is appropriate for the Court to take judicial notice of the City Charter. Weed v. Jenkins, 873 F.3d 1023, 1028 (8th Cir. 2017) ("[M]atters of public record such as state statutes, city charters, and city ordinances fall within the category of 'common knowledge' and are therefore proper subjects for judicial notice.") (citation omitted).

A key grammatical feature here is that the sentence places a series of coordinate verbs—"meet," "review," "interview," and "issue"—under one auxiliary verb ("shall"). In other words, the subject ("The ethics review committee") and the auxiliary ("shall") appear only once at the start of the list of actions. Because the verbs in that list are in parallel and connected by "and," the auxiliary "shall" governs all of them. Put simply:

- The sentence sets up the structure: "The ethics review committee shall [verb], [verb], [verb], and [verb]."
- The presence of "and" shows that "issue" is the final verb in the same coordinated series as "meet," "review," and "interview."
- Since the auxiliary "shall" applies to all verbs in that parallel list, it necessarily carries forward and applies to "issue."

The Supreme Court has already blessed the argument that a final policy maker may be held liable for a constitutional violation because of their **failure to act** when such action is otherwise required. For instance, where the State renders a person vulnerable and strips him of his ability to defend himself, an injury that results from a state official's negligence in performing his duty is peculiarly related to the governmental function. Negligence in such a case implicates the "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."[27]

Likewise, the text of 42 U.S.C. § 1983 focuses on the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Noticeably absent

---

[27] *Monroe v. Pape*, 365 U.S. 167, 184 (1961).

from the statute is any language stating that there must be some affirmative action that deprives an individual of rights – inaction as much as action can cause such deprivation.

The Eighth Circuit Court of Appeals has similarly supported a finding that a failure to act can constitute a constitutional violation in *Tlamka v. Serrell*.[28] There, the Court imputed an affirmative act upon guards that had failed to approach and aid inmate Tlamka, despite the patent nature of the inmates injury.[29] Such a "harmful omission" was sufficient to demonstrate deliberate indifference pursuant to the Eighth Amendment, and therefore support a claim for liability under § 1983.[30]

*b. The Maplewood City Council's refusal to disavow Jackson's complaint that the Mayor used the Commissioner Ethics Code to punish Jackson for his political speech, despite a textual responsibility to do so, is a deliberate action to condone the Mayor's attack on Jackson's political speech.*

Plaintiff's allegation is that the Mayor used the Commissioner Ethics Complaint mechanism to punish Jackson for his political speech. When the City Council refused to disavow that behavior, the City ratified the Mayor's conduct, establishing a policy or custom that the Mayor may use the ethics process to punish political opponents for protected speech.

---

[28] *Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

[29] *Id.*
[30] *Id.*

In the seminal decision regarding ratification of unconstitutional conduct, *Praprotnik,* the Supreme Court held that "if the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."[31] Every federal circuit recognizes the principle that if the there is evidence that the reviewing final policymaker ratified the subordinate's decision and the basis for it prior to the infliction of the injury or contemporaneously with the infliction, the municipality is subject to § 1983 liability.[32]

Municipal liability under § 1983 attaches when a municipal official possessing final authority with respect to the action makes "a deliberate choice to follow a course of action ... from among various alternatives."[33] When a subordinate makes a decision that is subject to review, and the municipality's authorized policymakers approve the

---

[31] *Praprotnik*, supra at 127.

[32] See, e.g., *Hall v. Marion Sch. Dist. No. 2*, 31 F.3d 183, 196 (4th Cir. 1994) (affirming the district court's ruling that the city, knowing of retaliation by its subordinates against an employee's exercise of her first amendment rights, could be liable under § 1983 for ratification of the injury); *Meyers v. City of Cincinnati,* 14 F.3d 1115, 1119 (6th Cir. 1994) (affirming the district court's allowing a § 1983 judgment against a city's civil service commission because it had ratified the firing of the plaintiff in violation of his first amendment rights when it refused to reverse the firing action taken at a lower level which it knew to be retaliatory); *Fiorenzo v. Nolan,* 965 F.2d 348, 351 (7th Cir. 1992) (affirming the district court's grant of summary judgment on plaintiffs' § 1983 claim because the final policymaker had been out of town and was not informed of the unconstitutional conduct of subordinates until after it had occurred); *David v. City of Denver*, 101 F.3d 1344, 1358 (10th Cir. 1997) (holding that a civil service commission could ratify personnel decisions and create § 1983 municipal liability); *Pearson v. Macon-Bibb Hosp. Auth.*, 952 F.2d 1274, 1281 (11 th Cir. 1992) (reversing the district court's grant of summary judgment on § 1983 claim because there was sufficient evidence to allow a jury to find that the employer had ratified the decision to fire the plaintiff ab initio).

[33] *Soltesz v. Rushmore Plaza Civic Ctr.,* 847 F.3d 941, 946 (8th Cir. 2017) (quotation omitted).

subordinate's decision "and the basis for it," their ratification is "chargeable to the municipality because their decision is final."[34] In *Gustilo*, the Eighth Circuit reversed a trial court that found as a matter of law that the Board of a county hospital had not ratified the conduct of Dr. Hilden, a manager that had written a memorandum outlining controversial Facebook posts as a rationale for termination of the Plaintiff, and the Board adopted in part the rationale in the termination of the Plaintiff doctor.[35]

*Gustillo* noted that the inquiry as to ratification is highly fact intensive, and often a jury question.[36] In particular, the adverse employment action taken against the Plaintiff-Doctor purportedly in retaliation for a series of controversial Facebook posts necessarily involved the testimony of the member's of the Board, who had reviewed the memorandum created by Dr. Hilden and that identified the Facebook posts as being a partial rationale for the adverse action.[37] In that case, the Eighth Circuit focused on whether the summary judgement record established that the Board had not considered the Facebook posts in its decision to demote the doctor.[38]

Similarly here, the actions of the Council in failing to render a decision at least plausibly implicates the allegation that that failure was motivated by a desire to affirm the Mayor's use of the ethics policy to punish Jackson for his Facebook post. In particular, in assessing whether a First Amendment injury has occurred, "the

---

[34] *Praprotnik* at 127.
[35] Gustilo v. Hennepin Healthcare Sys., Inc., 122 F.4th 1012, 1017 (8th Cir. 2024)
[36] *Id.*
[37] *Id.* at 1017.
[38] *Id.* at 1019.

question is not whether the plaintiff himself was deterred, though how plaintiff acted might be evidence of what a reasonable person would have done."[39] When applying the ordinary firmness test, courts should be "mindful" that the "effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable."[40] Here, the inaction of the board in responding to an allegation that the Mayor had co-opted the cities ethics code to punish his political opponent for exercising protected first amendment rights surely meets this criterion at the motion to dismiss stage.

3. <u>Jackson's arrest for expired tags in front of Bethel and Chosich and at the direction of Greenberg is relevant to demonstrating both that the City failed to act in reviewing the ethics complaint against the mayor because of a motivation to ratify the Mayor's conduct, and for the demonstration that a conspiracy to deprive of constitutional rights existed in violation of § 1983.</u>

In the context of this argument, Jackson's arrest for the failure to have license tags, in front of Defendant Chosich and Defendant Bethel, is relevant to showing that the Defendant City of Maplewood retaliated against Jackson for failing to review the ethics complaint. The failure to do so suggests that the City administration, in conjunction with the police, took seriously the Mayor's written admission that he would drum up charges to have Jackson arrested. [Doc. 48 at 12, ¶ 61].

---

[39] *Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014) (cleaned up).
[40] *Danielson v. Huether*, 355 F. Supp. 3d 849, 861 (D.S.D. 2018)

In *Nieves v. Bartlett,* the Supreme Court held unequivocally hat the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.[41] That showing addresses Hartman's causal concern by helping to establish that "non-retaliatory grounds [we]re in fact insufficient to provoke the adverse consequences."[42]

Here, Plaintiff's allegation that the Mayor, in conjunction with Defendant Bethel and Defendant Chosich, schemed to arrest Plaintiff for having expired plates – a violation likely to not result in the arrest of similarly situated people. On its own, then, that claim can support a § 1983 violation for retaliatory arrest.

The conjunction of the arrest with Bethel's decision to sell a candle that had been previously manufactured to commemorate the event adequately supports Plaintiff's § 1983 conspiracy theory at the Motion to Dismiss stage. Plaintiff alleges that Bethel had pre-manufactured a set of candles that depicted Jackson being arrested. [Doc. 48 at 18 ¶ 85]. Likewise, Bethel had a preformed Facebook post that publicly celebrated the arrest, which she paired with allegedly defamatory comments directed at Jackson. [Doc. 48 at 18 ¶ 86]. Recall also Jackson's allegation that Greenberg texted Bethel advising her of the plan to have Jackson so arrested. [Doc. 48 at 12, ¶ 61].

---

[41] *Nieves v. Bartlett*, 587 U.S. 391, 407, 139 S. Ct. 1715, 1727, 204 L. Ed. 2d 1 (2019); *see also United States v. Armstrong*, 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996).
[42] *Harman v. Moore,* 547 U.S. 250, 256 (2006).

Contrary to Defendant's suggestion that the conspiracy is between the municipality and its employees, the allegation then is that the conspiracy is between Greenberg, Bethel and Chosich. The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.[43] The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all."[44] In *United Brothers,* the Supreme Court affirmatively did <u>not</u> hold that § 1985 claims are limited to race.[45] Instead, the question was left open. Given the gravity and apparentness of this conspiracy to retaliate against Jackson, the allegation at least plausibly supports such a claim.

Respectfully submitted,

**OTT LAW FIRM, LLC**

BY: */s/ Joseph Ott*
Joseph A. Ott         #67889
Mark E. Blankenship, #73123
3544 Oxford Avenue
Maplewood, Missouri 63143
Telephone: (314) 293-3756
Facsimile: (314) 689-0080
Email: joe@ott.law

*Attorneys for Plaintiff*

---

[43] *United Broth. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott,* 463 U.S. 825, 835, 103 S. Ct. 3352, 3359, 77 L. Ed. 2d 1049 (1983).

[44] *Id.* at 835.