# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| BRAD JACKSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 4:24-CV-01207-NCC |
| | ) | |
| CITY OF MAPLEWOOD, BARRY | ) | |
| GREENBERG, KATE BETHEL, and | ) | |
| ISAAC CHOSICH, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant City of Maplewood's ("Maplewood")

Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 49) and Memorandum in Support

(Doc. 50).  Plaintiff filed a Memorandum in Opposition (Doc. 54), and Maplewood filed a Reply

(Doc. 55).  The parties have consented to the jurisdiction of the undersigned United States

Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 28).  For the following reasons,

Maplewood's Motion to Dismiss (Doc. 49) will be **GRANTED**.

### I.  Background

On July 31, 2024, Plaintiff filed a Petition in the Circuit Court of St. Louis County,

Missouri, 21st Judicial Circuit, Cause No. 24SL-CC03556, alleging First and Fourteenth

Amendment violations, and conspiracy pursuant to 42 U.S.C. § 1983, and various state law

claims[1] (Doc. 1 at 1-2).  On September 4, 2024, Maplewood, with consent of all defendants,

---

[1] Plaintiff's Petition included the following claims: public disclosure of private facts against
Defendant Greenberg (Count I); defamation against all defendants (Count II); tortious interference against
all defendants (Count III); First Amendment violation pursuant to 42 U.S.C. §1983 against all defendants
(Count IV); Fourteenth Amendment violation pursuant to 42 U.S.C. § 1983 against all defendants (Count
V); conspiracy pursuant to 42 U.S.C. § 1983 against all defendants (Count VI) (Doc. 1-3 at 7-16).

removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446 (*id.* at 1).  On September 11, 2024, Maplewood filed a Motion to Dismiss (Docs. 13, 14).  After briefing on the motion, the Court granted Plaintiff's request for leave to file a First Amended Complaint (*see* Docs. 42, 47).  The First Amended Complaint alleges the following facts.

A.  Maplewood

Maplewood is a constitutional charter city, and the Maplewood City Charter ("Charter") exercises the maximum delegation of powers by the Missouri Constitution to the municipal government (Doc. 48 at 2).  The Charter authorizes the creation of a six person council ("City Council") comprised of the elected junior and senior aldermen of each of the three city wards and the mayor, and states that "[e]xcept as this Charter provides otherwise, all powers of the city shall be vested in the council" (*id.*).  The Council Ethics Code prohibits City Council members from "[c]ausing citizens or employees to be threatened, badgered, harassed, and the like in such a manner as to [sic] convey the impression that such conduct is the action of the city council or an elected official" (*id.* at 2-3).

On February 27, 2024, Maplewood adopted the Board and Commission Member Code of Ethics ("Commission Ethics Code") (*id.* at 3).  The Commission Ethics Code provides that "[a]ny person may file a written complaint alleging a violation of this Code of Ethics within 30 days of the alleged violation," ("ethics complaint" or "complaint") that the complaint should be submitted to the mayor, and the mayor must then assemble an Ethics Review Committee ("Committee") (*id.*).  In the event a violation is found, appeals can be made to the City Council (*id.* at 4).  According to Plaintiff, the mayor is "nominally restricted from participating in debates at the first stage of the ethics review process" but "[a]s a matter of policy and practice, the mayor

2

has substantial influence and control over the actions, findings and punishments (if any) meted out by the initial investigatory body" (*id*.). The Commission Ethics Code is "subject to enforcement" by Maplewood's mayor (*id*.).

B. Plaintiff, Bethel and Greenberg

In March of 2016, Plaintiff opened a store, Roughneck Grooming and Beard Co. ("Roughneck"), which sold men's grooming products (*id*.). Defendant Kate Bethel ("Bethel") owned Maven Candles and Soaps ("Maven"), located two doors down from Roughneck (*id*. at 5). Maven sold a competing beard oiling product (*id*.). Plaintiff and Bethel's competing businesses resulted in "progressively amplifying acrimony" for the next three years, including Bethel accusing Plaintiff of stealing proprietary business information and using it to unfairly compete with her (*id*.).

During 2020, Plaintiff campaigned for Maplewood mayoral candidate Nikylan Knapper ("Knapper") by volunteering and canvassing (*id*.). Knapper ran against Defendant Greenberg ("Greenberg") who was the mayor of Maplewood at the time (*id*.). Greenberg utilized a Facebook account titled "Barry Greenberg, Mayor of Maplewood" (*id*.). Greenberg posted about Plaintiff on this account, accusing Plaintiff of fabricating screenshots and other evidence that portrayed Greenberg negatively (*id*.).[2]

Throughout 2020, Bethel "liked," shared, and commented on Greenberg's posts about Plaintiff and posted additional accusations against Plaintiff and Roughneck, including the following: the business was operating without a license, Plaintiff stole Bethel's business recipes

---

[2] Plaintiff alleges Greenberg's posts generally concerned an allegation that Plaintiff was making threats toward one of Greenberg's supporters, but that allegation was false, and Greenberg later apologized to Plaintiff (*id*).

and products, and Plaintiff was dishonest (*id*. at 5-6).  During this timeframe, anonymous letters were sent to Maplewood residents who had ties to Plaintiff or Roughneck (*id*. at 6).  The letters included statements that Plaintiff was a drug dealer, beat his wife, had mental health disturbances, was a male prostitute, employed criminals at Roughneck, and used the store for dealing cocaine, among other allegations (*id*.).  Letter recipients included Plaintiff's parents, parents of children in Plaintiff's children's classes, Plaintiff's children's teachers, Plaintiff's landlord, former and long-term customers, and others (*id*.).  Plaintiff alleges, on information and belief, that Bethel and Greenberg met and discussed sending the anonymous letters, with Bethel providing information and Greenberg drafting the letters (*id*.).  These letters stopped after the April 2021 mayoral election (*id*. at 7).

Knapper won the 2021 mayoral election (*id*.).  Shortly after she was elected, Knapper appointed Plaintiff to the Sustainability Commission, and in April 2022, appointed him as a commissioner of the Maplewood Planning and Zoning Commission (*id*.).  The latter appointment was set to conclude in 2026[3] (*id*.).

C.  Plaintiff's September 8, 2023 Facebook Post, and Chosich

In July of 2021, Plaintiff was informed that a friend, Jakob Baxter ("Baxter"), sexually assaulted John Doe 1 (*id*. at 8).  Plaintiff urged John Doe 1 to go to the police, but he did not (*id*.).  That same year, Defendant Chosich ("Chosich") was a member of Plaintiff's band, and also a member of Baxter's band (*id*.).  Plaintiff told Chosich about the allegation against Baxter (*id*.).  Baxter's band's fans then harassed Plaintiff, alleging Plaintiff was spreading rumors because of an alleged prejudice against homosexual individuals (*id*.).  On September 8, 2023,

---

[3] Plaintiff does not allege whether he currently holds these positions.

4

Plaintiff posted on Facebook that Baxter had "groomed and sexually assaulted" a number of young musicians in St. Louis (*id*.).

D.  Ethics Complaint Against Greenberg's Ally

Greenberg's ally, Chasity Maddox ("Maddox") ran for City Council and was elected in November of 2023 (*id*.).  That same month, Plaintiff filed an ethics complaint against Maddox for a Facebook post on her re-election campaign account which falsely stated Plaintiff made sexual advances toward her (*id*. at 9).

E.  Ethics Complaint Against Plaintiff

As the April 2024 mayoral election approached, Plaintiff against supported Knapper, and a second round of anonymous letters began (*id*.).  These letters contained information from private conversations between Plaintiff and Chosich (*id*. at 7).  Plaintiff alleges Chosich took pieces of conversations, added annotations, and portrayed the conduct "in a far different light than the reality" (*id*.).  Other letters contained content from private messages with an employee Plaintiff was romantically involved with, and included an "annotation" falsely suggesting Plaintiff sexually assaulted the woman (*id*.).

Greenberg was elected mayor in April 2024 (*id*. at 9).  Subsequently, the City Council created the Commission Ethics Code (*id*.).  Pursuant to the Commission Ethics Code, Greenberg allegedly wrote an ethics complaint against Plaintiff in retaliation for his supporting Knapper and his filing of an ethics complaint against Maddox (*id*.).  The ethics complaint concerned Plaintiff's September 8, 2023 Facebook post, and alleged Plaintiff's post falsely accused Baxter of sexually assaulting eleven underage boys (*id*. at 10).  Greenberg directed Bethel to sign and submit the ethics complaint as her own, falsely representing to the Committee that the complaint

5

was written by her (*id*.).   Plaintiff alleges an email from Greenberg to Bethel acknowledged that the intention of the ethics complaint was to have Plaintiff removed from his commission appointment, but the "context" of the ethics complaint shows Greenberg's motivation was punishment for supporting his opponent, for Plaintiff's ethics complaint against Maddox, and "other complaints" about Plaintiff's protected speech (*id*. at 9-10).   The Committee directed Greenberg to abstain from the complaint review and decision-making process, but he was allegedly copied on all emails involving the Committee's deliberations (*id*. at 10).

On May 9, 2024, Plaintiff submitted to the Committee redacted private messages between Plaintiff and the alleged sexual assault victims to support and corroborate his Facebook accusations against Baxter (*id*.).   Greenberg forwarded these materials to Bethel, and Bethel forwarded them to Chosich (*id*. at 11).   On May 10, 2024, Chosich posted all of the materials on Facebook, along with his opinions that the materials did not amount to proof because the statements weren't made to police, and that Plaintiff falsified the allegations (*id*.).   On the same day, the Committee dismissed the ethics complaint against Plaintiff (*id*.).

F.  Ethics Complaint filed against Greenberg and Plaintiff's Arrest

On June 4, 2024, Plaintiff filed an ethics complaint against Greenberg alleging he violated the Charter by "[c]ausing citizens or employees to be threatened, badgered, harassed, and the like in such a manner as to the [sic] convey the impression that such conduct is the action of the city council or an elected official" (*id*.).   In the ethics complaint, Plaintiff also alleged Greenberg had acted with the purpose of retaliating against Plaintiff for his exercise of his First Amendment rights (*id*.).   The ethics complaint was submitted to the deputy mayor and heard before a consolidated, private, special session of the City Council (*id*.).   The City Council heard

evidence but had not ruled on the complaint as of the date of the filing of the First Amended Complaint (*id*. at 11-12).

Plaintiff alleges the City Council has intentionally avoided ruling on Plaintiff's complaint to prevent the Court from reviewing the conduct of the mayor in this matter (*id*. at 12).  Plaintiff further alleges that by failing to rule, the City Council ratified Greenberg's conduct and is presumed to have adopted the position that Greenberg's actions were consistent with Maplewood's policies (*id*.).  Plaintiff finally alleges that a ruling that Greenberg violated the Council Ethics Code by filing an ethics complaint against Plaintiff would be an admission that Greenberg's conduct was unlawful and subject them to potential liability, or alternatively, a ruling that Greenberg did not violate the Council Ethics Code, would explicitly ratify his actions (*id.*).

Greenberg also allegedly demonstrated "his control or ability to control the [C]ity [C]ouncil in ruling on the ethics complaint" by investigating and proffering suggestions to the Maplewood City Attorney charges that could be "drummed up" against Plaintiff (*id*.). Specifically, Greenberg allegedly told Bethel he intended to speak with a municipal judge and prosecutor to look at municipal charges punishable by a $1,000.00 fine or three months in jail so that Plaintiff could not litigate his ethics complaint against Greenberg (*id*.).

On June 21, 2024, Plaintiff was pulled over for expired tags (*id*. at 13).  The officer pulled behind Plaintiff, directed him to make a left, and then directed him to pull over in front of Greenberg's old architectural firm (*id*.).  Maplewood police arrested Plaintiff and allegedly provided advance notice to Greenberg, Bethel, and Chosich, who were present and filmed the arrest (*id*. at 12-13).

G.  Claims Against Maplewood

Plaintiff includes ten counts[4] in his First Amended Complaint, with the following two claims involving Maplewood: "First Amendment Retaliation" (Count I) and "Conspiracy to Deprive Plaintiff of Constitutional Rights Pursuant to 42 U.S.C. § 1985(3)" (Count X) (Doc. 48). Plaintiff's Count I allegations are brought against Maplewood and Greenberg in his individual and official capacity, while Count X lacks specificity with respect to which Defendants are included (id. at 13, 19).

In Count I, Plaintiff alleges he engaged in protected speech by making a Facebook post on September 8, 2023, describing allegations against Baxter,[5] and that Greenberg retaliated against him by authoring an ethics complaint against him, violating his First Amendment rights (id. at 13-14).  Plaintiff claims Bethel's filing of the ethics complaint against Plaintiff at Greenberg's direction suggests the complaint was motivated by a desire to punish his political opponents and amounts to an admission that Greenberg knew that submitting the complaint himself would be illegal (id. at 13-14).

Plaintiff claims Greenberg's actions are tantamount to the actions of the City Council through ratification, stating: "By failing to disavow the actions of Jackson, the Maplewood City Council has ratified the policy and practice of Defendant Greenberg in utilizing the ethics

---

[4] Plaintiff's First Amended Complaint includes the following claims: First Amendment retaliation pursuant to 42 U.S.C. §1983 against Maplewood and Greenberg in his individual and official capacity (Count I); defamation against Chosich (Counts II-VII); defamation against Bethel (Counts VIII); intentional infliction of emotional distress against Bethel (Count IX); and conspiracy to deprive Plaintiff of constitutional rights pursuant to 42 U.S.C. § 1985(3) presumably against all Defendants (Count X) (Doc. 48).

[5] Maplewood does not dispute that the Facebook post constitutes "protected speech."  Despite Plaintiff's assertion that his post about Baxter was the relevant "protected speech," Plaintiff's theory is that Greenberg allegedly retaliated against him for supporting Greenberg's political opponent.

complaint process as a bludgeon against the exercise of protected first amendment rights" (*id.* at 14).  Plaintiff alleges Maplewood, by hearing the ethics complaint against Greenberg for the alleged retaliatory filing of the ethics complaint, acknowledges there is at least a colorable claim against Greenberg (*id.*).

Plaintiff alleges alternatively that Greenberg had final policy making authority over the Committee (*id.* at 14).  Plaintiff alleges that Greenberg, as mayor, had an affirmative duty under the Commission Ethics Code to convene a Committee to investigate allegations against a commissioner, was copied on all internal communications regarding the ethics complaint, and was able to "unilaterally disseminate information provided to the [C]ommittee without their knowledge" (*id.*).  Further, Maplewood's failure to make a determination in the ethics complaint filed by Plaintiff against Greenberg "suggests their ongoing efforts at manipulating the record so he escapes liability" (*id.*).  Plaintiff alleges Maplewood's conduct following Plaintiff's complaint against Greenberg as mayor "further solidifies" the claim that Maplewood has adopted Greenberg's position that the Commission Ethics Code can be used to attack opponents for protected speech (*id.* at 14-15).

Finally, Plaintiff alleges Maplewood's conduct in "coordinating" Plaintiff's arrest for an expired license plate tag "suggests a use of the normal police power functions of municipal government to retaliate against Jackson's free speech rights," which would deter a reasonable person from exercising those rights (*id.* at 15).

With respect to Count X, Plaintiff alleges Bethel and Greenberg "had an explicit agreement and coordinated strategy during the 2020 mayoral campaign" to use Greenberg's official Maplewood mayoral page and anonymous letters to attack Plaintiff for his support of an

opposing mayoral candidate (*id*. at 20).  Chosich also participated in sending anonymous letters during the 2024 mayoral race (*id*.).  Plaintiff further alleges Greenberg made an explicit agreement with Bethel to file a false ethics complaint against Plaintiff for his September 8 Facebook post (*id*.).  Plaintiff claims Greenberg has continued to convey his desire to punish Plaintiff to Bethel, City Council members and Maplewood police officers (*id*.).  Finally, Plaintiff alleges his arrest on June 12, 2024, demonstrates a coordinated effort by Greenberg, Bethel, Chosich, and Maplewood police to "use the levers of state power to attack political enemies," which would chill an ordinary person from exercising their First Amendment rights (*id*. at 21).

H.  Maplewood's Motion to Dismiss

Maplewood argues Plaintiff fails to state a viable cause of action against it because none of the allegations form the basis for liability under *Monell v. Department of Social Services*, 436 U.S. 658, (1978)[6] (Doc. 49 at 1).  More specifically, Maplewood argues that Plaintiff's allegations do not amount to a Maplewood policy or decisions of a final policymaker on matters within his authority that were the moving force behind any alleged violation of Plaintiff's constitutional rights (*id*.).  Maplewood also argues that Plaintiff fails to state the elements of a viable retaliatory arrest claim because Plaintiff admits there was a warrant out for his arrest at the time he was arrested (*id*. at 2).  Finally, Maplewood argues that, to the extent Plaintiff attempts to state a § 1985(3) conspiracy claim against it, Plaintiff has failed to state a viable claim upon which relief may be granted (*id*.).  Maplewood argues it, and the claims against it, should be dismissed from the case (*id*.).  For the reasons set forth below, the Court agrees.

---

[6] Under *Monell*, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983." 436 U.S. 658, 694.

## II.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted."  To survive a motion to dismiss, a complaint must show "'that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  All reasonable inferences from the complaint must be drawn in favor of the nonmoving party.  *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012).

## III.  Analysis

### A.  Count I: First Amendment Retaliation Pursuant to 42 U.S.C. § 1983

Maplewood argues Plaintiff's claims of First Amendment retaliation do not form the basis for *Monell* liability because Plaintiff's imprecise, circular, and confusing allegations do not demonstrate the existence of a Maplewood policy, the actions of a final policymaker, or that any policy of Maplewood is the direct cause of the alleged constitutional violation (Doc. 50 at 3). Specifically, Maplewood argues that Plaintiff's claims that (1) Greenberg retaliated against him for his Facebook post by authoring an ethics complaint against him, (2) the City Council ratified Greenberg's actions, and (3) that he was arrested based on first amendment retaliation, all fail to state viable causes of action against Maplewood (*id*.).  For the reasons set forth below, the Court agrees.

"Section 1983 provides a cause of action against any 'person' who, acting 'under color of' state law, deprives the plaintiff of 'rights, privileges, or immunities secured by the Constitution' or granted by federal statute."  *Danielson v. Huether*, 355 F.Supp.3d 849, 858 (D.S.D. 2018).  "[T]he First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech."  *Lozman v. Riviera Beach*, 585 U.S. 87, 90 (2018). Further,

> [r]etaliation by a public official in response to an exercise of First Amendment rights forms a basis for § 1983 liability. *Naucke,* at 927. To establish a claim for First Amendment retaliation under § 1983, the plaintiff must show that s/he 1) "engaged in a constitutionally protected activity"; 2) that the government official's adverse action caused him/her to suffer an injury which would "chill a person of ordinary firmness from continuing ... in that activity"; and 3) "that the adverse action was motivated in part by ... the exercise of [his] constitutional rights.". *Naucke,* at 927–28 quoting *Carroll v. Pfeffer,* 262 F.3d 847, 850 (8th Cir.2001) (quoting *Bloch v. Ribar,* 156 F.3d 673, 678 (6th Cir.1998)).

12

*Palmore v. City of Pacific*, 851 F.Supp.2d 1162, 1172 (E.D. Mo. 2010).

A municipality is a "person" under § 1983, but "cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). *Monell* and its progeny have set out the contours and limits of this type of suit:

> The Supreme Court has set a high bar for establishing municipal liability under § 1983, and demands careful analysis from district courts, to avoid any risk that liability could be imposed under a theory of respondeat superior. *See Pembaur*, 475 U.S. at 479, 106 S.Ct. 1292. A municipality bears responsibility for its own torts, not the torts of its employees. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "[I]t is when execution of a government's policy[,] ... by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. 2018.

*Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 947 (8th Cir. 2017). "Liability under § 1983 for a governmental entity must be based upon an official custom, policy, or practice of the city that causes the deprivation." *Palmore*, 851 F.Supp.2d at 1174 (citing *Monell*, 436 U.S. at 690-94). A municipal policy or custom can be established as follows:

> Broadly speaking, courts have found a policy or custom when the alleged unconstitutional action was taken by the municipality's legislative body, *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011); when a widespread practice exists that, "although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law," *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion) (cleaned up); or when the municipal employee who took the allegedly unconstitutional action has "final policymaking authority" as to "the subject matter in question," *Pembaur*, 475 U.S. at 483, 106 S.Ct. 1292 (plurality opinion).

*Danielson*, 355 F.Supp.3d at 871.  Finally, the municipal policy or custom must be the "moving force" behind the alleged injury:

> A municipality is not liable under § 1983 unless there is "a direct causal link between" the municipal policy or custom and the plaintiff's constitutional deprivation.  *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *see also Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (explaining that the plaintiff must show that the municipality, "through its *deliberate* conduct, ... was the 'moving force' behind the injury alleged").  Moreover, "there must be an unconstitutional act by a municipal employee before a municipality can be held liable," although "there need not be a finding that a municipal employee is liable in his or her individual capacity."  *Webb v. City of Maplewood*, 889 F.3d 483, 487 (8th Cir. 2018) (cleaned up).

*Id.* at 872.

In short, "a municipality may be held liable for the unconstitutional acts of its employees only when (1) a municipal policy or custom exists, and (2) that policy or custom was the 'moving force' behind the constitutional violation(s)."  *Lollie v. Johnson*, No. 14-CV-4784 (SRN/HB), 2015 WL 3407931, at *4 (D.Minn. May 27, 2015) (citing *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)).  To state a plausible *Monell* claim in his First Amended Complaint, Plaintiff must sufficiently allege that Maplewood is liable under this standard.  *See id.*

### 1.  Municipal Policy, Custom, or Action of Official Policymaker

Plaintiff does not allege an express written policy infringed upon his constitutional rights.[7]  An unwritten or *de facto* policy is "evaluated under the standards used to analyze the

---

[7] Where an express written policy exists, "[t]he potential for municipal liability in that situation is well established, because a constitutional violation flows directly from a policymaker's deliberate choice reflected in an official policy or action." *Szabla*, 486 F.3d at 389.  In such cases, "[t]o establish a

sufficiency of a *Monell* custom claim." *Lollie*, 2015 WL 3407931, at *4.  To demonstrate a

municipal custom exists, Plaintiff must allege the following three elements:

> (1) The existence of a continuing, widespread, persistent pattern of
> unconstitutional misconduct by the governmental entity's employees; (2)
> Deliberate indifference to or tacit authorization of such conduct by the
> governmental entity's policymaking officials after notice to the officials of that
> misconduct; and (3) The plaintiff's injury by acts pursuant to the governmental
> entity's custom, *i.e.,* proof that the custom was the moving force behind the
> constitutional violation.

*Id.* at *5 (modified) (citing *Ware v. Jackson County*, 150 F.3d 873, 880 (8th Cir. 1998)).  "To

survive a motion to dismiss, [Plaintiff] need not prove each of these three prongs, but [] must

allege enough facts about each element of the claim to raise a right of relief above a speculative

level."  *Id.*

### A.  Custom to Utilize Ethics Complaint

To the extent Plaintiff relies on Greenberg's filing of an ethics complaint against him, a

single isolated incident, to support the existence of a municipal custom, the claim fails.  While it

is not entirely clear whether Plaintiff is alleging the existence of a custom on this basis, Plaintiff

sprinkles the words "policy and practice" in his allegations, stating that "the Maplewood City

Council has ratified the policy and practice of Defendant Greenberg in utilizing the ethics

complaint process as a bludgeon against the exercise of protected first amended rights" (Doc. 48

at 14).  Based on this single incident related to Plaintiff's experience alone, Plaintiff has not

plausibly alleged an unconstitutional custom.  *See Bolderson v. City of Wentzville, Mo.*, 840 F.3d

982, 986 (8th Cir. 2016) ("To trigger municipal liability based on unofficial municipal custom,

---

constitutional violation, no evidence is needed other than a statement of the municipal policy and its
exercise."  *Id.* at 390 (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality
opinion)).

the custom must be so pervasive among non-policymaking employees of the municipality that it effectively has the force of law."); *Perryman v. City of Bloomington*, 704 F.Supp.3d 961, 967-68 (D.Minn. 2023) (While "a plaintiff is not required to identify the full scope of an alleged custom at the motion to dismiss stage, . . . , an unconstitutional custom claim cannot be predicated on a single act." (internal quotations omitted)); *see also Quinn v. Doherty*, 637 F.Supp.3d 647, 667 (D.Minn. 2022) ("Plaintiffs' specific allegations relate only to Plaintiffs' experience. This isolated event does not establish a custom."); *Yang v. City of Minneapolis*, 607 F.Supp.3d 880, 898 (D.Minn. 2022) ("Alleging a single instance of misconduct is not sufficient to support an inference of a custom or unofficial policy of the City."); *Ball-Bey v. Chandler*, 415 F.Supp.3d 884, 895 (E.D. Mo. 2019) (collecting cases) (While "[t]he Eighth Circuit has not directly addressed the quantum of 'continuing, widespread, persistent' conduct a plaintiff must allege to satisfy the *Iqbal* standard in this context, it has held that isolated incidents do not suffice and that allegations of 'many' incidents do establish liability.").

Plaintiff fails to plead facts creating the plausible inference that a single instance of an alleged retaliatory filing of an ethics complaint constitutes municipal custom for which Maplewood could be liable, and the claim cannot proceed on this basis.

## B.  Ratification

Plaintiff also alleges Maplewood is liable based on a ratification theory, namely, that the City Council's failure to make a determination on Plaintiff's ethics complaint against Greenberg establishes that Greenberg's actions were consistent with Maplewood policy (Doc. 48 at 14-15). Maplewood argues the lack of a final decision on the ethics complaint Plaintiff filed against Greenberg cannot "ratify" any alleged unconstitutional conduct when the City Council is only

determining whether Greenberg violated the Council Ethics Code (Doc. 50 at 5).  Maplewood also cites *Monell* and *Mettler* to support its argument that by asserting the City Council "ratified" Greenberg's actions after the fact, Plaintiff defeats his own claim because a later ratification cannot amount to a "moving force [behind] the constitutional violation" (*id.*).  In other words, Maplewood argues, the ratification theory does not apply in this case (*id.*).

The ethics complaint allegedly authored by Greenberg in retaliation against Plaintiff was dismissed by the Committee on May 10, 2024, and the ethics complaint filed by Plaintiff against Greenberg was filed June 4, 2024 (Doc. 48 at 11).  The Court agrees that the City Council's action or inaction as to the ethics complaint filed by Plaintiff on June 4, 2024, cannot plausibly be the "moving force" behind Plaintiff's alleged constitutional violation.  *See Lollie*, 2015 WL 3407931 at *6.  The court in *Lollie* illuminated the fault in similar post-injury arguments:

> the Court notes that insofar as Plaintiff argues that a municipal custom was created by the City's failure to investigate and discipline the allegedly culpable officers in this case, the Court holds that Plaintiff does not plausibly allege that the City's custom was the "moving force" behind the alleged constitutional violations that took place on January 31, 2014. As Defendants correctly explain, "[p]ost-injury wrongful conduct cannot be the moving force behind the injury at issue." (*See* Defs.' Resp. at 8 [Doc. No. 18] ); *Mettler*, 165 F.3d at 1205 (explaining that in order to state a plausible *Monell* custom claim, the plaintiff would need to show that the defendant "failed to investigate previous incidents before a court could conclude the deputies at the time of the shooting believed a municipal custom allowed them to violate [the victim's] rights with impunity."); *see also Fancher v. Klann,* No. 13–CV–435 (DSD/JJK), 2014 WL 4294960, at *4 (D. Minn. Aug 18, 2014) (holding that a subsequent Internal Affairs investigation cannot be the moving force for the incident that precipitated the investigation); *Tompkins v. Frost,* 655 F.Supp. 468, 472 (E.D.Mich. 1987) (stating that "[w]rongful conduct after an injury cannot be the proximate cause of the same injury"). Therefore, Plaintiff also fails to plausibly allege facts relevant to the third element in a *Monell* custom claim. *See Ware,* 150 F.3d at 880 (requiring a plaintiff to show that the municipality's custom was the "moving force" behind the constitutional violation).

*Id.* Here, Plaintiff has not alleged that the City Council failed to investigate previous incidents upon which Greenberg utilized the ethics complaint to retaliate against protected speech, and City Council's failure to make a determination on a later-filed complaint against Greenberg cannot be the moving force behind Greenberg's alleged unconstitutional retaliation. Plaintiff has not alleged a plausible *Monell* claim on this basis.[8]

### C. Official Policymaker

Plaintiff alternatively alleges Maplewood is liable because Greenberg is an "official policymaker" who "had final policymaking authority over the Maplewood Ethics Committee." (*see* Doc. 48 at 14, Doc. 54 at 2). Maplewood argues that Greenberg is not a final policymaker, but even if he was, his actions could not yield liability against Maplewood under *Pembaur v. City of Cincinnati*,[9] 475 U.S. 469 (1986) (Doc. 50 at 6).

Specifically, Maplewood argues that the facts alleged describe Greenberg's independent actions, not Greenberg's setting of city policy, and no Maplewood policy can be inferred here (*id.*). Maplewood further argues that Plaintiff's own allegations provide that Greenberg misrepresented authorship of the complaint to the Committee, and the Committee directed

---

[8] Notably, the *Lollie* court recognized "that the Eighth Circuit has not expressly recognized a post-incident ratification theory under *Monell*," though other circuits have in limited factual situations described as "extreme" or where there is "something more than a single failure to discipline or the fact that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures." *Id.* at *7 (internal quotations omitted). Additionally, "even if the Eighth Circuit ultimately recognizes post-incident ratification *Monell* claims," Plaintiff has not alleged sufficient facts to survive dismissal. *See id.* ("The failure of policymakers to discipline subordinates after one isolated incident, and publicly report their findings from that incident, is not an adequate basis for municipal liability under *Monell*."). Here, it has not been alleged that Greenberg is a "subordinate" of the City Council, and Plaintiff does not allege a failure beyond the isolated "inaction" on this particular complaint.

[9] *Pembaur* held "that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483.

18

Greenberg to abstain from the process (Doc. 50 at 5, Doc. 48 at 10).  Maplewood also argues that Plaintiff's assertion that Greenberg carries final policy-making authority over the Committee is nonsensical because the Committee dismissed the very complaint Greenberg allegedly authored (Doc. 50 at 5).

Additionally, Maplewood points out that Greenberg is not a final policymaker because Maplewood is a charter city, and the Charter[10] places final policymaking authority in its City Council (Doc. 50 at 6 (citing City of Maplewood Charter § 3.1)).  Accordingly, Maplewood argues, it may only be found liable for the deliberate unconstitutional actions of its City Council as a matter of law (*id*.).  Maplewood further asserts that although Plaintiff attempts to construe the Commission Ethics Code as granting Greenberg policy-making authority, a review of the same reveals otherwise (*id.*).  Maplewood asserts that the Commission Ethics Code provides that an ethics complaint should be submitted to the mayor, and the mayor will assemble a Committee for investigation of the complaint (*id*.).  Citing directly from the Commission Ethics Code, Maplewood asserts that the Committee consists of the senior councilmember from each ward, and its members are predetermined, not selected by the mayor (*id.* at 6-7).  The Committee is responsible for overseeing compliance with the Commission Ethics Code, for initiating an impartial investigation, and for issuing a recommendation for action on the complaint (*id*. at 7).  Maplewood asserts the mayor's duty is ministerial and only consists of accepting and forwarding the complaint (*id*.).

---

[10] Maplewood asserts and the Court agrees that the Court may appropriately take judicial notice of the Maplewood City Charter, in that "matters of public record such as state statutes, city charters, and city ordinances fall within the category of 'common knowledge' and are therefore proper subjects for judicial notice." *Weed v. Jenkins*, 873 F.3d 1023, 1028 (8th Cir. 2017) (modified); *see also Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss.").

As noted above, "a municipality cannot be made liable by application of the doctrine of *respondeat superior*." *Pembaur*, 475 U.S. at 478 (citing *Monell*, 436 U.S. at 691). A municipality can face liability pursuant to § 1983 for a "single decision to take unlawful action made by municipal policymakers," if the official is "responsible for establishing final government policy respecting such activity." *Id.* at 483. In other words, "[m]unicipal liability 'may be imposed for a single decision by municipal policymakers' who possess 'final authority to establish municipal policy with respect to the action ordered.'" *Hamilton v. City of Hayti*, 948 F.3d 921, 929 (8th Cir. 2020) (quoting *Pembaur*, 475 U.S. at 480-81); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) ("[A]n unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business.").

"[A] policy is 'a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters.'" *Stockley v. Joyce*, 963 F.3d 809, 823 (8th Cir. 2020) (quoting *Mettler*, 165 F.3d at 1204). "The [P]laintiff must show that the conduct challenged in the lawsuit fell within the employee's final policymaking authority." *Danielson*, 355 F.Supp.3d at 872.

Whether Greenberg exercised final policymaking authority for Maplewood is a question of state law for the trial judge to decide.[11] *See Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214-15 (8th Cir. 2013). According to the Charter, final policymaking authority rests with the City Council, which is a six-person group, including the mayor. Despite this, Plaintiff still

---

[11] The Court must look to (1) state and local positive law and (2) state and local custom or usage having the force of law to determine whether Greenberg was a final policymaker. *Atkinson*, 709 F.3d at 1215.

argues in his response he has shown that Greenberg has final policy making authority over the ethics complaint investigation into Plaintiff (Doc. 54 at 2).  The Court disagrees.

Plaintiff asserts the policy at issue is "whether to enforce the [Commission] Ethics Code applicable to officials appointed to serve on commissions," and that this policy is committed to the discretion of Mayor Greenberg (*id.* at 3).  To support his claim, Plaintiff cites the Commission Ethics Code, which states "Complaints should be submitted to the Mayor, who will (upon receipt) assemble an ethics review committee for investigation of the complaint" (*id.*). Plaintiff argues that Greenberg's authority is similar to a criminal prosecutor, "[b]ecause the ethics code can only be enforced by Greenberg, the decision to file an ethics complaint is squarely within the policy purview of the mayor," and even though the Committee reviews the complaint, "the decision to enforce the complaint itself was subject to the discretion of the mayor, because he was charged to oversee the investigation and insure [sic] that the Commission Ethics Code was 'faithfully executed'" (*id.* at 5).  Plaintiff additionally argues that Greenberg's representations were false and motivated by a desire to punish protected speech, and this transforms "his role from ministerial transmitter to witness," and establishes that "pursuant to the policy of Maplewood, the Mayor can be both witness and enforcer of the ethics policy, and can use it at his whim to punish anyone that opposes him" (*id.*).

Finally, Plaintiff cites *Praprotnik* for the proposition that "[a] subordinate official possesses delegated final policymaking authority when that official acts (1) free of review and (2) without any constraints imposed as a matter of policy by the original policymaker" (*id.* (quoting *Praprotnik*, 485 U.S. at 125)).  Plaintiff's allegations, however, do not provide that Greenberg's actions were free of review or without any constraints.  Instead, Plaintiff's

21

allegations provide that all powers of the city "except as otherwise provided," are vested in a six person City Council comprised of the elected senior and junior alderman of each of the three city wards *and* the mayor. (Doc. 48 at 2).  Plaintiff cites the Charter for its statement that the mayor "[s]hall have the following powers and duties: … [s]ee that all laws, provisions of the Charter and acts of the council, subject to enforcement by him or by officers subject to his direction and supervision, are faithfully executed" (*id*. at 3).  Nothing within these excerpts refer to the mayor's authority to set policy, nor do they state the mayor acts free of review or without any constraints with respect to any area, let alone the ethics complaint process.  None of these allegations show that Greenberg had final policymaking authority with respect to the ethics review process.

Further, Plaintiff's allegations regarding the mayor's involvement in the ethics complaint process describe essentially, an administrative function, not policymaking authority.  Namely, the mayor accepts the complaint, convenes the Committee, and passes it to them for resolution.  Contrary to policymaking authority, the mayor's role as alleged involves no decision-making, discretion, or policymaking whatsoever. [12]  Although Plaintiff alleges "[t]he Maplewood City Charter delegates a ministerial duty to the Mayor to enforce the Maplewood Commissioner [sic] ethics code," Plaintiff also alleges the mayor is not involved in reviewing an ethics complaint but may become involved if an appeal is filed.  No appeal was alleged to take place in this case.

---

[12] Notably, final policymaking authority and final decisionmaking authority have been distinguished by the Supreme Court.  *See Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 660 (8th Cir. 2007) ("In *Pembaur,* the Court supplemented its pronouncement that the fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." (internal quotation omitted)).

None of these facts meet the cited *Praprotnik* elements for showing an individual possesses delegated final policymaking authority.

Plaintiff also argues Greenberg's decision to have Bethel submit the complaint is evidence of his final policymaking authority over enforcement of the ethics complaint "because it demonstrates that he alone determines who is entitled to file such a complaint" (*id*. at 6). Plaintiff's conclusory assertion is baffling given that the Plaintiff alleges that the Commission Ethics Code provides that *anyone* can file a complaint, and Plaintiff includes no allegations that any individual attempted to file an ethics complaint but was turned away by the mayor. Additionally, Plaintiff alleges no difficulties or mayoral interference in filing his own ethics complaints against Maddox and Greenberg with the City Council (Doc. 48 at 13). Given the facts alleged, certainly Greenberg would have refused these complaints if he held ultimate authority over the City Council.  Further, Greenberg's decision to have Bethel submit an ethics complaint he authored was not a policy decision setting a future course of conduct for Maplewood simply by virtue of the fact that he is the mayor.  His decision did not instantaneously and independently form a Maplewood policy or change the existing one as to who can submit a complaint.  None of Plaintiff's allegations support an assertion that Greenberg's actions equated to policymaking.

Despite Plaintiff's allegations of Greenberg's control over the ethics complaint process and enforcement, the very complaint Greenberg is alleged to have authored in order to punish Plaintiff was dismissed by the Committee.  This outcome would be absurd if Greenberg in fact had sole discretion as to whether to "enforce the complaint."  Greenberg's complaint was reviewed by the Committee and dismissed, and Greenberg apparently did not have the final say, despite Plaintiff's focus Greenberg's supposed "enforcement" authority.

Furthermore, assuming without determining for the sake of ruling on the current motion that Greenberg is an official policymaker for Maplewood, Plaintiff has not sufficiently alleged that Greenberg had final authority to establish a policy as to whether to enforce the Commission Ethics Code or to use the ethics complaint procedure to impose on individual's First Amendment rights. Plaintiff focuses on the following to show Greenberg held policymaking authority in this area: Greenberg allegedly authored the complaint but determined he shouldn't file it himself, Greenberg was copied on Committee emails during the complaint review process, and Greenberg obtained Plaintiff's evidence and disseminating it. These facts merely demonstrate individual decisions and actions, some of which were taken against Maplewood's direction and policies. For instance, Plaintiff's own allegations provide that the Committee told Greenberg to abstain from involvement with the ethics review process with respect to the ethics complaint against Plaintiff. Additionally, according to the City of Maplewood Code of Ordinances, when the mayor is an involved party, the deputy mayor must accept the written complaint (Doc. 54 at 6). Greenberg's alleged deviation from the Committee's direction and the Code of Ordinances cannot possibly be found to constitute municipal policy without turning the concept of municipal liability upside down. *See Bolderson v. City of Wentzville, Mo.*, 840 F.3d 982, 986 (8th Cir. 2016) ("Bolderson further maintains that the mayor and city administrator each violated the city's anti-fraud policy in the way that they handled her report. We cannot see how officials' deviation from established policy itself constitutes official municipal policy. If it did, the concept of official municipal policy would be turned on its head.").

In sum, Greenberg's decision to have Bethel file an ethics complaint against Plaintiff was not a deliberate choice of a guiding principle or procedure on a matter which Greenberg had the

authority to set policy. *See Stockley*, 963 F.3d at 823-24; *Simon v. Jones,* No. 4:23 CV 955 CDP, 2025 WL 1025012, at *2 (E.D. Mo. Apr. 7, 2025). Further, finding municipal liability under these circumstances would amount to the impermissible application of *respondeat superior*, and fly in the face of the imposed limits on suits filed under § 1983 against municipalities. *See Danielson*, 355 F.Supp.3d at 874. For all of the reasons set forth above, Plaintiff's *Monell* claim against Maplewood based on allegations that Greenberg was a final policymaker will be dismissed. *See Stockley*, 963 F.3d at 823-24.

### D. Arrest on June 21, 2024

As part of his First Amendment Retaliation claim, Plaintiff alleges he was stopped and arrested on June 21, 2024, in retaliation for exercising his First Amendment Rights (Doc. 48 at 12-13, 15). Maplewood argues dismissal is proper because Plaintiff fails to allege the basis of this *Monell* claim by failing to allege that the incident was the result of an unconstitutional policy or order of final policymaker (Doc. 50 at 7). Maplewood also argues the following: Plaintiff pled there was a warrant out for his arrest at the time he was arrested,[13] Plaintiff fails to allege

---

[13] As Maplewood points out, Plaintiff pled in his original complaint that "[o]n June 21, 2024, the day after the ethics hearing against Defendant Greenberg, Plaintiff Jackson got pulled over by the police for an outstanding traffic warrant" (Doc. 1-3 at 8). However, in Plaintiff's First Amended Complaint, he alleges he was pulled over "for having expired tags" (Doc. 48 at 13).

The Court cannot consider Plaintiff's earlier statement regarding the warrant binding at this stage without converting the motion to dismiss into a motion for summary judgment. *See W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank,* 712 F.3d 165, 173 (3d Cir. 2013) (At the motion to dismiss stage the district court must stick to the four corners of the amended complaint, as "the plaintiff cannot be bound by allegations in the superseded complaint" without converting the motion to dismiss to a motion for summary judgment.); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002) ("When a party has amended a pleading, allegations and statements in earlier pleadings are not considered judicial admissions.").

The Court notes, however, and Plaintiff is forewarned that the pleading may be introduced at a later stage as an admission. *See Sunkyong Int'l Inc., v. Anderson Land & Livestock Co*., 828 F.2d 1245, 1253 n.3 (8th Cir. 1987) ("A pleading abandoned or superseded through amendment no longer serves any function in the case but may be introduced into evidence as the admission of a party."); *W. Run Student Hous. Assocs., LLC*, 712 F.3d at 172–73 ("This is not to say, however, that a party's assertion of contrary

the arresting officer lacked probable cause, and Plaintiff fails to allege he did not have expired

tags.  Maplewood asserts that, as a result, Plaintiff does not have a viable First Amendment

retaliation claim on this basis (*id*. at 8).  Maplewood further asserts that without a viable

underlying constitutional violation, there can be no *Monell* violation (*id*.).

To state a claim for First Amendment retaliatory arrest, Plaintiff is required to generally

allege four elements:

> (1) he engaged in protected activity; (2) the defendant took an adverse action
> against him that would chill a person of ordinary firmness from continuing the
> activity; (3) his protected activity motivated, at least in part, the defendant to take
> the adverse action; and (4) the defendant lacked actual or arguable probable cause
> to arrest him.

*Murphy v. Schmitt*, No. 22-1726, 2025 WL 1890929, at *2 (8th Cir. Jul. 9, 2025).  A narrow

exception exists with respect to the fourth element: "the existence of probable cause does not

defeat a plaintiff's claim if he produces 'objective evidence that he was arrested when otherwise

similarly situated individuals not engaged in the same sort of protected speech had not been.'"

*Id*. (quoting *Gonzalez v. Trevino*, 602 U.S. 653, 144 S.Ct. 1663, 1665-66 (2024) (quoting *Nieves

v. Bartlett*, 587 U.S. 391, 139 S. Ct. 1715, 1727 (2019))).  "Because this inquiry is objective, the

---

factual positions in the pleadings is without consequence.  A superseded pleading may be offered as
evidence rebutting a contrary assertion," for example, at the summary judgment stage.).
     Despite, this, the Court notes that it is not required to ignore the fact that Plaintiff failed to refute
Defendant's argument that there was an outstanding warrant for Plaintiff at the time of his arrest and may
deem the lack of refutation a concession.  *See Brown v. Biggs*, No. 4:24CV001098 JM, 2025 WL
1287783, at *1 (E.D. Ark. May 2, 2025) ("If a party does not refute the opposing party's argument, then it
is deemed a concession.");  *Stepps v. Bd. of Trustees of Univ. of Arkansas*, No. 4:21-CV-00986-LPR,
2022 WL 4086647, at *4 n.45 (E.D. Ark. Sept. 6, 2022) ("Defendants concede this point by failing to
argue it.");  *Turner v. ILG Techs., LLC*, No. 2:21-CV-04192-NKL, 2023 WL 3553133, at *2 (W.D. Mo.
May 18, 2023) ("Ours is an adversarial system of litigation; if a party does not refute the opposing party's
argument, then it is deemed a concession.").

26

statements and motivations of the particular arresting officer are 'irrelevant' at this stage."

*Nieves*, 587 U.S. at 407 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

Plaintiff does not allege that probable cause or arguable probable cause was lacking and, in fact, affirmatively alleges he was "pulled over on Sutton for having expired tags" (Doc. 48 at 13). Plaintiff's retaliatory arrest allegations under Count I consist of the following:

> The conduct of the City of Maplewood in coordinating to arrest Jackson for an expired license plate tag in front of Bethel, Chosich, and Greenberg at Greenberg's old architectural firm, and at a time when they would be waiting to film, suggests a use of normal police power functions of municipal government to retaliate against Jackson's free speech rights. Knowledge of the same would deter a reasonable person from exercising First Amendment Rights.

*Id.* at 15. Plaintiff fails to even mention probable cause or whether or not similarly situated individuals were arrested. Plaintiff merely argues, for the first time in his response to Maplewood's motion, that having expired tags is "a violation *likely to not* result in the arrest of similarly situated people" (Doc. 54 at 14) (emphasis added). Plaintiff's one-line speculative response does not equate to objective evidence that other similarly situated individuals who did not engage in protected speech were not arrested, nor does he allege discovery will show as much. Plaintiff offers no facts and makes no allegations from which the Court can plausibly infer the narrow exception to the fourth element applies.

Finally, even assuming a constitutional violation occurred, Plaintiff has failed to allege that a Maplewood policy or custom caused the violation in accordance with *Monell*. *See Lozman*, 585 U.S. at 95 ("It is well established that in a § 1983 case a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy.'" (modified)).

27

Accordingly Plaintiff's Greenberg's *Monell* claim against Maplewood based on allegations of retaliatory arrest will be dismissed.

**B. Count X: § 1985(3) Civil Conspiracy**

Maplewood asserts Plaintiff's 42 U.S.C. § 1985(3) civil conspiracy claim must be dismissed because Plaintiff failed to state a viable claim upon which relief can be granted (Doc. 49 at 2). Maplewood argues the claim fails on three bases: (1) there is no Maplewood policy that was the driving force behind any violation of Plaintiff's constitutional rights; (2) the arrest was not a violation of Plaintiff's constitutional rights because there was a warrant out for Plaintiff's arrest; and (3) Maplewood cannot be deemed to have participated in any alleged conspiracy because the law presumes municipalities are incapable of entering into conspiracies and cannot be held liable pursuant to § 1985 (Doc. 50 at 9).

Defendant cites *Faulk v. City of St. Louis*, 30 F.4th 739, 749 (8th Cir. 2022) for the proposition that a municipality cannot be held liable under § 1985(3) "because 'a local government entity cannot conspire with itself through its agents acting within the scope of their employment,' even if the plaintiff 'alleges improprieties in the execution of those duties.'" *Id.* (quoting *Kelly v. City of Omaha*, 813 F.3d 1070, 1078-1079 (8th Cir. 2016)). *Faulk* is inapposite. In that case, the alleged conspirators were limited to the city and its employees. *Id.* Here, Plaintiff alleges Greenberg, Maplewood police officers, and private individuals, namely, Bethel, and Chosich were conspirators (Doc. 48 at 20-21). Accordingly, his § 1985(3) conspiracy claim is not foreclosed on this basis. Despite surviving the foregoing challenge, for the reasons set forth below, Plaintiff's claim for civil conspiracy pursuant to § 1985(3) will be dismissed.

28

As in Count I, Plaintiff fails to allege the conspiracy was the result of a Maplewood policy, practice, or custom, and thus, does not state a plausible claim:

> The City cannot be held liable under § 1985(3) because Plaintiff has failed to prove that its actions were taken pursuant to an established policy, practice or custom. *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1268 (7th Cir.1984); *Frazier v. City of Philadelphia*, 927 F.Supp. 881, 887 (E.D.Pa.1996); *Di Maggio v. O'Brien*, 497 F.Supp. 870, 874 (E.D.Pa.1980). Indeed, *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and its progeny have held that a municipality may not be held liable under § 1985(3) under a theory of respondent superior. In both §§ 1983 and 1985(3) cases brought against cities, "liability only exists where the constitutional injury results from a municipal policy or custom." *Frazier*, 927 F.Supp. at 887.

*DiBenedetto v. City of Reading*, No. Civ. 96-CV-5055, 1998 WL 474145, at * (E.D. Pa. Jul. 16, 1998). Plaintiff's conspiracy allegations point to Facebook posts, anonymous letters, the ethics complaint, and Plaintiff's arrest to demonstrate Defendants' coordination with each other against Plaintiff (Doc. 48 at 19-21). In his response to the Motion to Dismiss, Plaintiff focuses on the alleged conspirators' conduct: Bethel selling pre-manufactured candles depicting his arrest, Bethel's "preformed" Facebook post publicly celebrating his arrest, and Greenberg's alleged text to Bethel regarding the plan to have him arrested (Doc. 54 at 14). Plaintiff fails to allege however, that these actions were taken pursuant to a Maplewood policy, practice, or custom.

To the extent Plaintiff argues that the "arrest for expired tags in front of Bethel and Chosich and at the direction of Greenberg" demonstrates "that a conspiracy to deprive of constitutional rights existed in violation of § 1983" (*id.* at 13), while indeed suspicious, these allegations do not meet the pleading standard. Plaintiff utterly ignores Maplewood's assertion that there was a warrant out for Plaintiff's arrest, and instead cites *Nieves v. Bartlett*, for the proposition that a Plaintiff need not show the officers lacked probable cause if "a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals

not engaged in the same sort of protected speech had not been" (Doc. 54 at 14). As stated above, however, Plaintiff did not do that either – he provided no objective evidence in accordance with this standard.

Further, even if the Court determined Plaintiff sufficiently pled a municipal policy, practice or custom, Plaintiff's claim has other fatal flaws. To state a claim under § 1985(3) Plaintiff must allege

> (1) that the defendants conspired, (2) with the intent to deprive [him] of equal protection of the laws, or equal privileges and immunities under the laws, (3) that one or more of the conspirators did, or caused to be done, any act in furtherance of the object of the conspiracy, and (4) that [he] was injured or deprived of having and exercising any right or privilege of a citizen of the United States.

*Mendoza v. U.S. Immigration & Customs Enforcement*, 849 F.3d 408, 421 (8th Cir. 2017) (citing *Crutcher–Sanchez v. Cty. of Dakota*, 687 F.3d 979, 987 (8th Cir. 2012)); *see also Criswell v. City of O'Fallon, Mo.*, No. 4:06CV01565-ERW, 2007 WL 1760744, at *5 (E.D. Mo. June 15, 2007) (stating the elements and adding that conclusory allegations are insufficient to state a claim). Additionally, § 1985(3) requires "that there must be 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 834 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). "The class of persons against which the conspirators' discriminatory bias is directed must be a clearly defined and distinct class, and certainly the requisite class cannot be defined solely by reference to the Defendants' alleged wrongful conduct." *Mobley v. City of O'Fallon, Mo.*, No. 4:06CV1566 JCH, 2007 WL 9811318, at *4–5 (E.D. Mo. Mar. 30, 2007) (modified).

Plaintiff utterly fails to allege racial animus or that he was a member of a protected class, despite acknowledging the claim requires as much. Plaintiff apparently argues that a § 1985 claim is plausible here despite the claim's inadequacies "given the gravity and apparentness of this conspiracy to retaliate" against Plaintiff (Doc. 54 at 15). This statement is woefully inadequate, as "gravity and apparentness" of retaliation do not equate to racial or class-based animus.

Further, the Facebook posts, letters, ethics complaint, and arrest, describe actions directed at Plaintiff individually, allegedly because of his support of Greenberg's political opponent. Where retaliatory action is claimed to have been a reaction by Defendants to Plaintiff's own actions, "not acts which are part of the general pattern of discriminatory action directed toward any class," the claim must be dismissed. *Id*. at *5; *see also Dubray v. Rosebud Housing Authority*, 565 F.Supp. 462, 466 (D.S.D. 1983) ("At most, the Complaint states facts which show personal animus and discrimination because of each of the Plaintiff's individual opposition to Defendants. This individual animus and discrimination, however, cannot constitute a claim under § 1985(3)."). The facts alleged in the First Amended Complaint are not sufficient to create a plausible inference that Defendants were motivated by any invidiously discriminatory animus, and the § 1985(3) claim will be dismissed.

Finally, even if Plaintiff had alleged discriminatory animus, the § 1985(3) claim against Maplewood would still fail as municipalities have been deemed incapable of forming or possessing the *mens rea*, animus, or motive to be held liable under this section.[14] *See Roberson*

---

[14] Given that Plaintiff's § 1985(3) conspiracy claim has no less than three separate and arguably obvious reasons why it fails, the Court is troubled as to the Plaintiff's attorneys' utter lack of concern as to the veracity of the legal claims presented and the time and resources of the parties as well as those of the Court. Plaintiff's First Amended Complaint lacks *any* factual basis for the Court to infer that Defendants' actions were part of a conspiracy

*v. McDonald Transit Assoc.*, No. 3:14-CV-168-NBB-JMV, 2016 WL 2991142, at *4 (N.D. Miss. Apr. 20, 2016) ("Moreover, even had Plaintiff actually alleged such racial animus in support of this claim for relief, a municipality is not capable of possessing the invidious discriminatory animus or motive required to successfully maintain an action under § 1985(3)." (modified)); *Angelella v. Avvisato*, No. 3:15-CV-00511, 2016 WL 4379098 at *11 (M.D. Pa. Aug. 17, 2016) (quoting *Scott v. Twp. Of Bristol*, No. CIV.A. 90-1412, 1990 WL 178556, at *8 (E.D. Pa. Nov. 14, 1990)) (Courts have concluded that "municipalities are 'incapable of forming a *mens rea* sufficient to satisfy the racial animus or requirement of racially discriminatory motive under § 1985(3)'" and this determination has been considered "consistent with Supreme Court precedent, which has held that municipalities can have no malice independent of its officials." (modified)).

Plaintiff's § 1985(3) conspiracy claim is dismissed with prejudice as to Maplewood and without prejudice as to the other Defendants.

### C. Official Capacity Claims against Greenberg

Additionally, the Court will *sua sponte* dismiss Plaintiff's claims against Greenberg in his official capacity because the Court finds them redundant to Plaintiff's claims against Maplewood. *See Ross v. City of Tarpon Springs, Fla.*, No. 8:11-CV-2671-T-30EAJ, 2012 WL 1382271, at *1` (M.D. Fl. April 20, 2012) (*sua sponte* dismissing § 1983 official capacity claims which are redundant to claims against the city); *see also* Fed. R. Civ. P. 12(f) ("The court may

---

motivated by racial or class-based invidiously discriminatory animus despite the attorney's stating his understanding that the law requires as much. The other reasons for this claim's failure were not overly-complicated or close calls. Plaintiff's attorney persisted instead of dismissing the claim he apparently knew would fail, showing disregard for judicial resources.

The pleadings with respect to this claim reflect similar issues throughout the First Amended Complaint and Plaintiff's response to the Motion to Dismiss. One such example is the previously described pleadings with respect to the arrest warrant. Plaintiff is reminded that under Rule 11, attorneys are charged with presenting to the court claims and legal contentions that are warranted by existing law. Fed.R.Civ.P. 11(b)(2).

strike from a pleading … any redundant … matter," and may do so "on its own."); *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("[a] suit against a public employee in his or her official capacity is merely a suit against the public employer."); *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) ("A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity."); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.") (modified)).

Accordingly, any claims against Greenberg in his official capacity which are also brought against Maplewood are **DISMISSED** as redundant.  Greenberg will remain a defendant with respect to claims brought against him in his individual capacity.  *See McDonald v. City of Florissant*, No. 4:10CV986 CDP, 2010 WL 4272735, at *2 (E.D. Mo. Oct. 25, 2010).

## IV.  Conclusion

For the reasons outlined above, the Court concludes that Plaintiff has failed to sufficiently plead a *Monell* claim against Maplewood, and the claims against Maplewood are therefore dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Maplewood's Motion to Dismiss Counts I and X of Plaintiff's First Amended Complaint as to Maplewood (Doc. 49) is **GRANTED** and Defendant City of Maplewood is **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that Count I is **DISMISSED** as to Maplewood and Greenberg in his official capacity.

33

**IT IS FINALLY ORDERED** that Count X is **DISMISSED WITH PREJUDICE** as to Maplewood and Greenberg in his official capacity and **DISMISSED WITHOUT PREJUDICE** as to the remaining defendants.

A separate order of dismissal shall accompany this order.

Dated this 7th day of August, 2025.

___/s/ Noelle C. Collins_____
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE
