IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRAD JACKSON<br><br>Plaintiff<br><br>v.<br><br>BARRY GREENBERG et al.<br><br>Defendants | Case No. 4:24-cv-01207-NCC |

### AFFIDAVIT OF BRAD JACKSON

1. My is Brad Jackson. I am the Plaintiff in the above captioned matter and am offering this testimony on the basis of my knowledge and experience and swear its truth under penalty of perjury.

2. I have read and been advised of the Defendant's Motion for Summary Judgement and offer the following in opposition.

3. Plaintiff's Exhibit 1 shows a photo of Defendant Chosich playing songs with his band, "Issac Chosich Smoke Association" that was posted online. Defendant Chosich wrote a song about me for his band's album "Hate Speech for the Weak Minded" called "Shittin' 4 Thrillz" and plays this video of me, which is a compilation of videos showing me doing innocuous things, while playing the song at substantially all of his live shows. It contains lyrics describing a "fat ass dude singing out of key" and generally is an anthem to Defendant Chosich's longstanding hatred of me.

4. Plaintiff's Exhibit 2 shows a comment made by Defendant Chosich on a YouTube video made by a product reviewer on YouTube. The video depicts a neutral to negative review of the product. The YouTube Account @BALZYMAGEE is operated by Defendant Chosich. He indicates in his comment that he worked at the company, and falsely claims that my beard product is nothing more than "olive oil" in an attempt to denigrate and attack my business.

5. My beard oil is a combination of 8 different types of oil, including hemp oil, avocado oil, rice bran oil, sweet almond oil, apricot kernal oil and castor oil. There is no olive oil in the product.

6. Exhibit 3 depicts one of the cited defamatory statements made by Defendant Chosich from my First Amended Complaint filed with this Court. The statement was made on May 6, and states that I "[do not] pay child support." I have two minor children that share the same mother, to whom I am not married. There was litigation involving establishment of custody rights and a visitation schedule for the Minor Children. I am attaching as Exhibit 8 to this Affidavit the Judgement entered in Case Number 18SL-DR05625, which established 50/50 custody. The judgement notably orders no child support whatsoever. Exhibit 8 at 18 ¶ 14-15.

7. Although I am not required to pay any child support, I have a good relationship with my children and their mother in the context of our co-parenting arrangement. I pay for a lot of their expenses including extracurricular

activities, health insurance, clothes, etc. This is in concert with the co-parenting relationship I have with their Mother.

8. Exhibit 4 shows another of the pled defamatory statements, describing a number of patently false statements. *First,* as Exhibit 9 demonstrates, the Chastity Mattox ethics complaint did not deal with whether or not I "…tried to blackmail a city council with nudes." In fact *I filed the ethics complaint* – not Chastity Mattox. The complaint centered on the **false claim** that I made sexual advances towards her. And, the result of Chastity Mattox actions was that I was sent dozens of unsolicited sexual advances *by Chastity Mattox* to me, describing how she and her husband were "swingers" and wanted me to sleep with them.

9. Exhibit 5 shows the third cited defamatory statement. Chosich is right that at one point – 5 years ago and before marijuana dispensaries opened – I offered to sell marijuana and psilocybin mushrooms to him. But that does not make me a "drug dealer" in the sense Chosich describes attendant to enterprise criminal behavior. The rest of the statements are patently false. I do pay substantial taxes to the federal government each year. See attached Exhibit 10, Income Tax Filings. I have in the past had issues with taxes and made some delinquent payments on some local taxes, but I typically do pay all of my taxes. Finally, I did not raise money on gofundme for a "coke surgery." I did have a go-fund me because I had to get three surgeries consecutively to surgically repair a deviated septum and remove habitually infected tonsils, and a

subsequent rhinoplasty in an attempt to alleviate lifelong issues with breathing through my nose.

10. I have never in my life done cocaine, and could not because of the aforementioned chronic problems with my nose.

11. Exhibit 6 shows a third set of defamatory statements – in this case, by implication claiming that I manufactured evidence that Jakkob Baxter sexually abused minor boys. In fact, the evidence that Defendant Choish posted online provides plain evidence for what I believe to be the truth about the situation.

12. In particular, I am attaching as Exhibit 11 a truncated collection of support for my allegations. Multiple individuals recount that he intentionally targeted boys as young as 13–16, often aspiring musicians, by supplying them with alcohol and drugs, attempting sexual acts, and retaliating when they resisted by ostracizing them from the music scene (pp. 5, 7). One message cites his own admission of getting men drunk to "test if they are really straight," underscoring the lack of consent (p. 1). Accounts also detail that several victims remain silenced out of fear of retaliation and damage to their reputations, with one person specifically disclosing that Baxter tried to coerce him sexually at age 15 (p. 7). Together, these reports depict a consistent pattern of predatory grooming, coercion, and assault spanning multiple victims and contexts.

13. Exhibit 7 provides support for Defendant Chosich's continued and irrational hatred for me. Comments like this have been routinely made and there are at

least hundreds of them that he has then subsequently deleted. This post was made in the context of a Maplewood Facebook group post.

14. The damages from this defamatory conduct continue even now in this litigation. As a result of these posts from both Bethel and Chosich, and their promotion of and advocacy for these positions, I suffer ongoing humiliation and embarrassment. The damages to my company are similarly profound – my business relies entirely on word of mouth referrals, and my market has cratered as a result of their ongoing malicious conduct. Chosich to this day continues to post, including e.g. this post from June of this year – during the pendency of this litigation – again making the patently false claim that my beard oil is made olive oil.

15. In addition, I am attaching as Exhibit 12 copies of some of the letters that have been mailed to my family and friends. The letters contain information that can only have been known to Defendant Chosich. In particular pp. 1-2 show a letter that I received postmarked June 24, 2024 from "AJCP," and claiming to be investigating me for financial fraud as a result of a wire transfer that was allegedly made in the amount of $5,000.00.

16. I lived in Nashville, Tennessee, for many years. My son was born there. The Exit/In is a venue where I performed multiple times during my early touring years as a musician, and it is a place deeply important to me both personally and professionally.

17. In 2021, the Cobb family, who own the Exit/In, raised funds through multiple channels to make an initial offer to purchase the property. One of those channels was a GoFundMe campaign.

18. I contributed to that effort because of my longstanding personal connection to the venue and the Nashville music community.

19. Around that time, I had received a grant from the Regional Arts Commission in St. Louis for lost artist income due to COVID-19. I do not recall the exact amount of that grant, but I chose to pay it forward to another bastion of the arts by contributing those funds to the Exit/In fundraising effort.

20. I decided to direct my Regional Arts Commission grant to the Exit/In in Nashville rather than to St. Louis venues because of the immediacy and urgency of the need in Nashville at that time. The Exit/In faced an imminent purchase deadline that threatened its continued operation, whereas no St. Louis venue I was aware of faced such an immediate risk.

21. After making my total contributions, I learned through news reports that donations to the Exit/In effort were going to be refunded. I discussed this with my partner, Merril, in a conversation that took place in the presence of defendant Isaac Chosich. Because of prior instances where Mr. Chosich had shared information within the music community, I did not want him to know that I had donated the full grant amount to a Nashville venue instead of to St. Louis venues and artists.

22. My total contributions to the cause amounted to $5,000. This included my GoFundMe contribution, attendance and participation at multiple in-person fundraising events, and contributions made outside of GoFundMe. The official GoFundMe records accurately reflect the exact amount I contributed through that platform.

23. Two different screenshots are relevant to this matter. One is a legitimate image of my bank account history showing a $5,000 deposit. The other is a fabricated image showing a $5,000 GoFundMe donation.

24. I fabricated the GoFundMe donation screenshot and showed it to Mr. Chosich in person. This was a deliberate misdirection on my part, but it was grounded in fact: I had made the donation in full, but I did not want him to know the source of those funds. My intent was not to gain anything of value or deceive any institution, but to prevent Mr. Chosich from knowing I had given that money to a Nashville venue rather than to St. Louis venues and artists.

25. That fabricated screenshot was produced in a large document drop in the course of discovery in this matter, but its production was solely to document its existence, not to pass it off as an accurate record of my donation. The context surrounding it was missing from how it was presented.

26. Mr. Chosich reacted positively to the idea and appeared to view it favorably, as I imagined he would. I do not believe he would have reacted in the same manner had he known I gave the funds to a Nashville venue instead of to St. Louis venues and artists. I bear responsibility for his belief, as it stems directly

from my actions in creating that misperception. His belief in my deception is the reason he accepts this narrative as fact.

27. When the separate company later issued refunds, the amount I received was confirmed entirely by that company using its own records and verification process. This is a multi-million-dollar capital management firm with a fraud management department and established due diligence procedures. It is unreasonable to suggest that such a company could be defrauded out of a five-figure refund based solely on a screenshot, without corroborating transaction history.

28. Any difference between the amount reflected in GoFundMe's records and the total refund I received is solely attributable to that company's internal accounting process.

29. The defendants have repeatedly raised this donation and refund as a point of contention over the years, despite there being no misconduct in relation to the refund itself. This continued fixation strongly suggests their involvement in the anonymous letters sent to others about me.

30. The author of one of those anonymous letters went so far as to commit actual fraud by impersonating a representative of AJ Capital Partners and making this same accusation. In my view, the similarity between the anonymous letter's content and the defendants' repeated focus on this subject indicates a likely connection.

31. The remainder of the letters similarly contain facts that could **only have been derived** from Defendant Chosich: for instance, at page 3 we see a text message sent from me to Defendant Chosich. Page 4 contains continued allegations of fraud regarding the purported "cocaine surgery" described above, and was received near in time to Chosich's above described post. Page 6 contains a screenshot of Chosich's post, with the text message that was sent to Chosich, and describing me as a "loser," an "obese pig" and a "dealer." Note also that this letter was sent to Angela Lappin, a neighbor. Page 9, 10, 11 and 12 depict letters to my parents implying that I have significant mental health problems that need some sort of urgent treatment. That the letter is sent on behalf of the "maplewood community" adds insult. The compilation of posts includes references to my above described, credible allegation that there was unwanted sexual contact between Mr. Baxter and minors around the community. Page 13 shows a letter to another neighbor – the Tomkos – that contained duplicate copies of the letter sent Ms. Lappin.

32. All of the above described letters are outrageous and plainly designed to incite hatred and disregard for me. They are extreme examples of conduct I can only pray is not acceptable by courts of law, have caused me profound and unrelenting sadness and should be punished.

33. I am offering these observations on the basis of my knowledge, experience, and belief, swearing and affirming the same is true under penalty of perjury.

FURTHER AFFIANT SAYETH NAUGHT

_____
Brad Jackson

Date: 9/3/25

STATE OF MISSOURI        )
                         ) SS.
COUNTY OF ST. LOUIS )

The undersigned, being duly sworn upon his oath, deposes and states that the facts and matters stated in the foregoing Motion are true and correct according to her best information, knowledge and belief under penalty of perjury.

Subscribed and sworn to before me this ___3rd___ day of __September__ 2025.

JOSEPH OTT
Notary Public - Notary Seal
STATE OF MISSOURI
St. Louis County
My Commission Expires: Dec. 5, 2026
Commission # 22559128

_____
Notary Public

My Commission Expires: 6/6/26