**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRAD JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:24-cv-01207-NCC |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF MAPLEWOOD, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT ISAAC CHOSICH'S REPLY TO PLAINTIFF'S RESPONSE**

COMES NOW Defendant Isaac Chosich, through undersigned counsel, and for his Reply to Plaintiff Brad Jackson's Response to Defendant Chosich's Motion for Partial Summary Judgment ("Response"), states:

**Introduction**

Defendant Chosich has provided ample facts and documents which support his Motion for Partial Summary Judgment (the "Motion"). All allegedly defamatory statements Plaintiff has presented against Defendant Chosich in his First Amended Petition ("Amended Petition") (Doc. 42(2)) or in his Opposition to Defendant's Motion for Summary Judgment ("Response") (Doc. 68) are either true, substantially true, or a statement of opinion. It has also become apparent that Plaintiff has been less than truthful in his pleadings, discovery, and sworn affidavit as noted in the sections below.

Since the filing of the initial Motion, this Court has dismissed Count 10, the only count in Plaintiff's Amended Petition against Defendant Chosich which is not addressed in his Motion. Therefore, Defendant Chosich moves this Court to rule in his favor and against Plaintiff Brad

1

Jackson, grant his Motion in full or, alternatively, strike from Plaintiff's Amended Petition the statements this Court determines to be true, substantially true, or a statement of opinion.

### a. Any statement made that Plaintiff does not pay taxes is true.

Defendant Chosich has already filed with this Court tax liens filed against Plaintiff, both for failure to pay taxes, in case numbers 16SL-MC12206 and 17SL-MC03593.[1] Chosich's Mtn., Ex. A, B (Doc 56). He has also provided the documentation of personal property taxes owed by Plaintiff at the time he filed his Petition. *Id*., at Ex. C. Lastly, Defendant Chosich provided a statement made by Plaintiff where he brags to an audience that he does not pay his personal property taxes, and as a result has had up to 14 warrants issued for his arrest. SUMF, ¶ 4. Plaintiff admits all of this. SUMF, ¶¶ 1-4.

For Plaintiff to continue to assert that Defendant Chosich's statement that Plaintiff does not pay taxes is not true, when proof has been submitted in several forms and Plaintiff has admitted to stating that he does not pay his personal property taxes, is absurd. Simply providing federal tax returns (Doc. 68-11) does not negate the numerous other taxes Plaintiff admits he does not pay.

### b. Any statement made that Plaintiff is a drug dealer is true.

Plaintiff continues to assert that Defendant Chosich defamed him by stating that Plaintiff is a "drug dealer" who "sells drugs out of a "BBQ grill." Response, p. 3. According to Plaintiff's Response, "Jackson admits that 'five years ago--before dispensaries opened--he offered to sell marijuana/psilocybin to Chosich, but denies being a 'drug dealer' and that it was a 'single offer' and an 'isolated incident.'" *Id*. at p. 9 (emphasis removed). Merrian-Webster's Dictionary defines "drug dealer" as "a person who sells illegal drugs." *Drug dealer*, MERRIAM-WEBSTER DICTIONARY

---

[1] Plaintiff has another failure to pay taxes case against him not mentioned before that was filed in 2017, 17SL-MC07296. Plaintiff finally paid off those taxes on January 27, 2025, months after filing his Petition.

(Online 2025). Anybody that sells drugs prior to the drugs being legalized, or more commonly known as *illegally*, is a drug dealer.

Plaintiff also admits that he provided his menu of drugs for sale to Defendant Chosich. *See* Response, p. 3; Chosich's Mtn., Ex. F. One look at the drug menu Plaintiff provided should be enough to recognize that this was not a "single offer" to sell drugs as Plaintiff claims in his Response. To avoid speculation though, in another message to Defendant Chosich, Plaintiff states, "Got you in the grill. Did 28g of shake [marijuana] and a 3.5g chocolate bar [psilocybin]. $200 even if that works for you. Just throw cash on the stack in there. My guy is coming to grab shortly." SUMF, ¶ 24. Certainly appears as though he is a drug dealer who sells drugs out of a BBQ grill.

Further, Plaintiff stated in his responses to Defendant Bethel's interrogatories that "[f]or a short time, I sold marijuana before it was legal. This is known because Defendant Chosich was a regular recipient. As a friend, he got his for cheap." SUMF, ¶ 25. Plaintiff asserting that his sale of drugs was a "single offer" or an "isolated incident" is a blatant lie and conflicts with his own assertions. Any statement made by Defendant Chosich that Plaintiff is a drug dealer is true.

### c. Any statement made that Plaintiff committed wired fraud is true or substantially true.

Plaintiff asserts that Defendant Chosich defamed him by publicly stating that he has committed wire fraud. Under 18 U.S.C. § 1343, anyone that devises a scheme to defraud and uses electronic communication in interstate commerce to carry out the scheme has committed wire fraud.

In April 2021, the Exit/In in Nashville, Tennessee launched a campaign on GoFundMe called "KEEP Exit In INDEPENDENT" (the "Campaign"). SUMF, ¶ 26. A company called AJ Capital Partners ("AJCP") ended up purchasing the Exit/In and offered to refund any donations made during the Campaign. SUMF, ¶ 27.

On April 9, 2021, Plaintiff emailed AJCP seeking a refund for his donation to the Campaign. SUMF, ¶ 28. As part of his request, Plaintiff attached a receipt which appears to show he made a $5,000.00 donation, and that he was seeking a full refund. SUMF, ¶ 29. AJCP responded on April 21, 2021, asking Plaintiff to fill out a form in order to process his refund, which he did that same day. SUMF, ¶ 30. On May 11, 2021, AJCP confirmed that it had refunded the donation in full to Plaintiff's bank account. SUMF, ¶ 31.

During the process, Plaintiff told Defendant Chosich that he had fabricated the donation receipt, changing it from a donation of $5.00 to make it appear to be a donation of $5,000.00. SUMF, ¶ 32. In a message from Plaintiff to Defendant Chosich, Plaintiff stated "Remember when I told you I fabricated that go fund me donation. Lol." SUMF, ¶ 33.

When asked about the matter in an interrogatory Plaintiff stated,

> During the Exit/In GoFundMe campaign, I donated a substantial sum, $5,000, because I supported the cause and had the financial means at the time as I had received a grant from the Regional Arts Commission. As a former Nashville resident and long-time touring artist, preserving that venue mattered very much to me. I wanted to pay it forward. I'd received a grant from the RAC, and thought it was the best way to make use of that. After the property was sold to a private developer, the group publicly promised to return all donations. I received my refund directly from the corporation, as offered to all donors.

> Around that time, I mentioned the refund to a friend and it drew questions from Chosich. I made a tongue in cheek comment about the "scam" of covid. The reality is far less dramatic: I simply didn't want him to know I had money. I had loaned Chosich money on multiple occasions, and he had a well-known habit of asking people for financial favors. I made the remark as more of a joke to imply it was not money I intended to keep. It was deceptive, yes, but not malicious. It was more of a joke than something I ever expected to be taken seriously…

> Not only was the joke never intended to deceive him long-term, but I also told him in person - on more than one occasion - that it wasn't true, and that the donation had been real. Despite that, Defendant Chosich has continued to take the comment out of context and used it to falsely accuse me of wire fraud. That accusation is baseless…

4

> The idea that a multi-million-dollar development conglomerate could be tricked by a fabricated GoFundMe screenshot is laughable. But he believed it. That was the extent of it. No fraud occurred, no misrepresentation was made to the company, and the refund was legitimate and voluntary.

SUMF, ¶ 34.

Plaintiff, in his Affidavit filed on September 15, 2025 (Doc. 75-1) again states that he donated $5,000.00 to the Exit/In. SUMF, ¶ 35. However, in his Affidavit, Plaintiff admits that the receipt he provided to Defendants through discovery was fabricated by him. SUMF, ¶ 36.

Defendant Chosich, through counsel, has confirmed with a representative of AJCP that the email Plaintiff sent to request his refund used the same fabricated receipt as his proof of donation. SUMF, ¶ 37. Defendants have also confirmed with a representative of the Regional Arts Commission of St. Louis that Plaintiff did receive funding from them as he indicated, however he only received $1,000.00, not $5,000.00. SUMF, ¶ 38.

On the GoFundMe page for this Campaign the donation amounts are publicly posted and indicate that Plaintiff's only donation to this campaign was for $5.00, not $5,000.00. SUMF, ¶ 39. To confirm this donation amount, Defendant Chosich issued a subpoena to GoFundMe Inc. seeking documents related to Plaintiff's donations to the Campaign and provided notice to all other parties. GoFundMe's business records expressly state that Plaintiff only donated $5.00, not $5,000.00, to the Campaign.[2] SUMF, ¶ 40.

It is clear that Plaintiff has made false representations to Defendants in this case through discovery and in his sworn Affidavit, and potentially committed perjury in the process. It is also apparent, based on 18 U.S.C. § 1343, that any statements made by Defendant Chosich that Plaintiff committed wire fraud are likely true or substantially true.

---

[2] The online records show one donation of $5,000.00 made anonymously. As can be seen in the exhibit attached to the SUMF, this donation was not made by Plaintiff Brad Jackson.

**d. Any statement made that Plaintiff does not pay rent is true.**

Defendant Chosich has already presented to this Court the judgment against Plaintiff for failure to pay his rent, which Plaintiff admitted to in his Response. Chosich Mtn., Ex E; Response SUMF, ¶ 6. Plaintiff makes no effort to refute this assertion.

**e. Any statement made that Plaintiff does not pay child support is true.**

In addition to the documents already in the record of Plaintiff stating he does not pay child support, Plaintiff's own Exhibit 8 (Paternity Judgment) shows that Plaintiff does not pay child support. Response, Ex. 8. This is the truth of the matter.

**f. Any statement made that Plaintiff blackmailed a city council member with a threat to release nude photos is true.**

Plaintiff asserts that Defendant Chosich defamed him by stating that Plaintiff blackmailed a city council member, Chasity Mattox, by threatening to release nude photos of her. To start, Plaintiff makes a confusing argument that seems to state that because Plaintiff filed an ethics complaint against Ms. Mattox, he could not possibly have threatened to release nude photos of her. Plaintiff's filing of an ethics complaint does not preclude his threats to release nude photos of Ms. Mattox.

For context, on December 12, 2024, the Maplewood City Counsel held a meeting to vote whether to confirm Amber Whitycombe to the counsel. SUMF, ¶ 41. Ms. Mattox, a counsel member, was opposed to the confirmation. SUMF, ¶ 42. Ms. Mattox's position on this confirmation was publicly known and Plaintiff was very upset by her holding out on the confirmation. SUMF, ¶ 43.

As this meeting was taking place, Plaintiff began writing aggressive and harassing posts about Ms. Mattox on Facebook. In one Facebook post Plaintiff, referencing Ms. Mattox, stated "you don't want me dropping receipts about that one. But trust, I've got ALLLLLL the receipts.

The pictures sent, . . . Might want to stop pushing that angle, it doesn't go where you think it does." SUMF, ¶ 44. He further stated, "I don't give a shit what y'all think of me, or how two faced each of you are, but I have the screenshots of Chasity harassing me and asking for sex for 2 years and me declining each time. There are several community members aware of it as well. Reign your boy in or I'm gonna share them publicly." SUMF, ¶ 45. He was removed and blocked that evening by the group's moderators. SUMF, ¶ 46.

The incident was reported on by both the St. Louis Dispatch and 40 South News. "Brad Jackson wrote comments on a Maplewood community Facebook page which Mattox said were harassing and personally disparaging. Joe Hollman, *Maplewood City Council Proposes Additional Ethics Laws*, ST. LOUIS POST DISPATCH (Jan. 10, 2024). "The page's moderator took down Jackson's post and then blocked him from the site." *Id*.

Ms. Mattox was informed by friends and family that Plaintiff had threatened to release nude photos of her. SUMF, ¶ 47. As reported by 40 South News, Ms. Mattox filed an ethics complaint against Plaintiff alleging that Plaintiff had made posts about her on social media "of a sexual nature." Doug Miner, *Maplewood City Council work session focuses on ethics violations*, 40 SOUTH NEWS (Jan. 10, 2024).

Plaintiff acknowledges that Ms. Mattox accused him of attacking her, her children, and her husband after she turned down his sexual advances, and that he has a "well known habit of creeping out women in our community." Response, Ex. 9 (Ethics Complaint), p. 1. This very ethics complaint, authored by Plaintiff, asserts that Ms. Mattox was being deceitful and that these comments by her have damaged Plaintiff as a resident and business owner. *Id*. It also states that Ms. Mattox's friends have taken to bad mouthing him publicly and online. *Id*.

Given that this incident was reported on by multiple media outlets, occurred in a public venue on Facebook, Plaintiff's assertion that other people are "bad mouthing" him as a result, and that Plaintiff acknowledges all this in an ethics complaint he authored, it is ridiculous to assert that Defendant Chosich's comment, even if it were false, could have had any measurable impact on Plaintiff's reputation at the time he made it. More importantly, the statement made by Defendant Chosich is at least substantially true, if not completely true.

### g. Defendant Chosich worked at Roughneck Beard Company and had first hand knowledge of the ingredients in the beard oils.

Plaintiff's Response asserts that Defendant Chosich defamed him in a Youtube comment claiming that "Jackson's beard oil product is 'literally snake oil' consisting of a 'whole bunch of olive oil with a couple of dashes of them essential oils' and called Jackson a 'scam artist.'" Response, p. 3. Plaintiff also asserts that Defendant Chosich did not work at Roughneck which is simply false. *Id*.

Defendant Chosich, while he and Plaintiff were still friendly, worked at Roughneck from August 23, 2019 to March 13, 2020. SUMF, ¶ 48. As an employee of Roughneck, Defendant Chosich prepared some of the beard oil products. SUMF, ¶ 49. On December 9, 2019, there was an event in Maplewood called the Christmas Tree Walk. SUMF, ¶ 50. For this event, Plaintiff asked Defendant Chosich to assist him in making beard oils which Plaintiff and Merril Barden would sell on the sidewalk. SUMF, ¶ 51. On that occasion Plaintiff instructed Defendant Chosich to pour olive oil into brown bottle vessels and to top each off with a couple drops of "essential oils." SUMF, ¶ 52. There were several variations of these "essential oils" added and were given different product names. SUMF, ¶ 53.

Though the term "snake oil" is likely a matter of opinion, as that term refers to this portion of Plaintiff's beard oil products, it is accurate. Similarly, referring to someone as a "scam artist" is

a statement of opinion, but Plaintiff presenting his products as he did supports Defendant Chosich's opinion that Plaintiff is a "scam artist."

### h. Any statement regarding the possibility that Plaintiff could have used a burner phone to create a message chain to himself is true or a statement of opinion.

As stated in Plaintiff's Amended Petition, Plaintiff has embroiled himself in an ongoing Facebook campaign against a third-party, Jakob Baxter ("Baxter"). Am. Pet. ¶¶ 38-43. In an effort to support his position that Baxter had conducted himself inappropriately, Plaintiff posted a series of messages on social media, but the messages had the recipient's name redacted. *See* Ex. 11 (Doc. 68-9). In response, Chosich stated, "[t]hese messages could be going between Brad and his burner phone for all we know." Response, p. 4.

Simply doubting the validity of "evidence" that Plaintiff himself presented as truth on Facebook is not defamation. It is wholly conceivable that a person could use another phone to conduct an exchange that would support themselves in whatever way they desire. There is no way to know who sent Plaintiff these messages and could very well have been Plaintiff texting himself using another phone. This is a true statement.

Importantly, Plaintiff does not indicate in his Response the identity of the mystery person he is alleged to have had this conversation with. He also states that he has provided "substantial documentation supporting his allegations against Baxter." Response, p. 4. Plaintiff then cites to Exhibit 11 (evidence compilation), which appears to only include the anonymous messages in question.

Additionally, Plaintiff states in his Amended Petition that, "fans of Baxter's band began harassing Jackson, alleging that the complaints were false and that Jackson was spreading the rumors because of an alleged prejudice against homosexual people." Am. Pet. ¶ 42 (Doc. 42(2)). Regardless of the truth of the Baxter matter, Defendant Chosich's statement is categorically true,

9

and not defamatory in the slightest given that a multitude of other people were accusing Plaintiff of making false complaints.

### i. Plaintiff's arguments regarding the campaign of letters are unfounded, irrelevant, and contradict his own Amended Petition.

Plaintiff continues to throw accusations in his Response which are completely unfounded against Defendant Chosich regarding the campaign of letters. It is important to note that the only cause of action that references these letters in Plaintiff's Amended Petition is in Count 10 for conspiracy against all Defendants. *See* Am. Pet. ¶¶ 93-102. This count was categorically dismissed by this Court. *See* Order of Partial Dismissal (Doc. 62). No other counts address these letters and this whole line of argument is irrelevant to Defendant's Motion.

Besides failing to plead these letters in any count remaining against Defendant Chosich, Plaintiff contradicts his own pleading. In his Response, Plaintiff states that the "letters contain information that could only have been known to Chosich." Response, p. 4. However, Plaintiff's Amended Petition states,

> 35. **But some of the content for the later letters was private messages with individuals other than Chosich**. For instance, Jackson was romantically involved with an employee at his business and sent her a private message about sleeping with her after work, to which she replied with a laugh. One anonymous letter contained that message despite it being private between Jackson and the woman.[] The letter added an annotation suggesting that Jackson had sexually assaulted the woman – which was false.

Am. Pet., ¶ 35 (emphasis added). Plaintiff also states in his Amended Petition,

> 96. Bethel used her own page and her knowledge of Jackson's business to direct and develop an anonymous campaign of letters with the express advice and direction of Defendant Greenberg.

*Id*., at ¶ 96. Plaintiff's assertion that the messages contain information that only Defendant Chosich could have known is false.

10

Additionally, Plaintiff stated in his Amended Petition that "Letters went to Jackson's parents, parents of children in Jackson's children's classes, teachers for Jackson's children, Jackson's landlord, former and long term customers, and more." Just from a logical standpoint, to assert that Defendant Chosich has knowledge of the names and addresses of the parents of other children in Plaintiff's child's class is far-fetched. The same is true for the name and home address of the teachers at Plaintiff's child's school. Defendant Chosich has no knowledge of the names and addresses of the parents of other children in Plaintiff's child's class or the teachers at Plaintiff's child's school. SUMF, ¶ 54.

### j. Plaintiff is a public figure, and has failed to plead actual malice.

Plaintiff raises the issue of the pleading standard for defamation in Missouri for a private figure. Response, p. 5. However, Plaintiff is a public figure. When a plaintiff has run for public office he is a public figure. *McClanahan v. Anti-Defamation League*, 23-05076-CV-SW-JAM, 2023 WL 8704258, at *6 (W.D. Mo. Dec. 15, 2023). Additionally, when a plaintiff is a member of a band that is well known locally, performs and sells music nationally, grants interviews to news and radio media, invites public attention to themselves and their views, and are generally known to a wide audience, that plaintiff is a public figure. *Sigafus v. St. Louis Post-Dispatch, L.L.C.*, 109 S.W.3d 174, 177–78 (Mo. App. E.D. 2003). If a plaintiff is a public figure, he is required to plead "actual malice." *Id.*, at 177–78 (citing *Warner v. Kansas City Star Co.*, 726 S.W.2d 384 (Mo. App. W.D. 1987).

As stated in Plaintiff's Amended Petition, Plaintiff was appointed "to the sustainability commission shortly after she (sic) prevailed in April of '21, and in April of '22 was appointed to be a commissioner on the Maplewood Planning and Zoning Commission." Am. Pet. ¶ 36. In 2019 and 2025, Plaintiff ran for the Maplewood School Board, a public office. SUMF, ¶ 55. Plaintiff is

also the lead singer of a band called The Fighting Side which is known locally, performs and sells music nationally, grants interviews to news and radio media, invites public attention to themselves and their views, and are generally known to a wide audience. SUMF, ¶ 56.

Plaintiff is undoubtedly a public figure and as such is required to plead "actual malice." Plaintiff's Amended Petition fails to plead "actual malice." Chosich Answer, Aff. Def. ¶ 2 (Doc. 52). Despite the fact that Defendant Chosich's statements are all true, substantially true, or statements of opinion, the failure to plead actual malice is enough to warrant judgment in Defendant Chosich's favor as his pleading fails as a matter of law. Though Defendant Bethel is not incorporated in this Motion, this same failure to plead "actual malice" would also apply to the counts against her.

**k. Plaintiff's legal arguments surrounding *per se* defamation are erroneous.**

Plaintiff makes several attempts to impose *per se* liability regarding defamatory statements. Response, p. 6-7. Defendant Chosich's Motion is based on the fact that his statements were true, substantially true, or statements of opinion, all a defense to defamation claims. Plaintiff's arguments related to *per se* liability are misplaced and outdated. The Missouri Supreme Court was very clear on this matter in *Nazeri v. Missouri Valley Coll.* stating, "[w]e hold that in defamation cases the old rules of *per se* and *per quod* do not apply and plaintiff need only to plead and prove the unified defamation elements set out in MAI 23.01(1) and 23.01(2)." 860 S.W.2d 303, 313 (Mo. 1993). "In short, plaintiffs need not concern themselves with whether the defamation was *per se* or *per quod*, nor with whether special damages exist, but must prove actual damages in all cases." *Id*.

**l. Plaintiff does not dispute that Counts 3, 5, and 7 fail as a matter of law.**

As stated in Defendant Chosich's Motion, the tort of IIED "does not lie when the offending conduct consists only of a defamation." *Nazeri*, 860 S.W.2d at 316. Plaintiff does not dispute this in his Response. Pursuant to Defendant Chosich's arguments, this Court should dismiss counts 3, 5, and 7.

## <u>Conclusion</u>

Plaintiff argues that Chosich's animus and campaign, including "dozens/hundreds" of hostile posts, and the campaign of letters supports actual malice and punitive damages. Plaintiff has provided exactly five posts made by Defendant Chosich. As the facts, documents, and exhibits show, Defendant Chosich's comments were true, substantially true, or statements of opinion.

WHEREFORE, Defendant Isaac Chosich respectfully requests this Court rule in his favor and against Plaintiff Brad Jackson, grant his Motion for Partial Summary Judgment or in the alternative strike from Plaintiff's Amended Petition each statement the court holds to be true, substantially true, or a statement of opinion, grant attorney's fees and costs, and any other remedies as the court deems just and proper.

Respectfully submitted,

**GARLAND LAW, P.C.**

/s/ Michael D. Garland
Michael D. Garland, #74663(MO)
101 W. Argonne Ave. #202
Kirkwood, MO 63122
Tel: 314-332-6228
Email: michael@garlandlawpc.com

***Attorney for Defendant Isaac Chosich***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 9th day of October 2025, I electronically filed the foregoing via the Court's ECF electronic filing system, which sent notification of such filing to all counsel of record. I further certify that I signed, or caused my electronic signature to be placed upon, the original of the foregoing document.

<u>/s/ Michael D. Garland</u>