UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRAD JACKSON, | ) |
| | ) |
| Plaintiff, | )  Case No. 4:24-cv-01207-NCC |
| | ) |
| v. | ) |
| | ) |
| CITY OF MAPLEWOOD, et al. | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT ISAAC CHOSICH'S STATEMENT OF UNCONTROVERTED MATERIAL FACTS IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Isaac Chosich, by and through undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for his Statement of Uncontroverted Material Facts in Support of his Motion for Partial Summary Judgment, states as follows:

1. On September 23, 2016, the Missouri Department of Revenue filed a Certificate of Tax Lien against Plaintiff Brad Jackson ("Plaintiff") for his failure to pay taxes. Attached as **Exhibit A** is a true and accurate copy of a Certificate of Tax Lien issued to Plaintiff Brad Jackson with case number 16SL-MC12206.

   **PLAINTIFF'S RESPONSE: Admit.**

2. On April 14, 2017, the Missouri Department of Revenue again issued a Certificate of Tax Lien to Plaintiff for his failure to pay taxes. Attached as **Exhibit B** is a true and accurate copy of a Certificate of Tax Lien issued to Plaintiff with case number 17SL-MC03593.

   **PLAINTIFF'S RESPONSE: Admit.**

1

3. As of November 13, 2024, according to the St. Louis County Personal Property Information website, Plaintiff owed back taxes for the years 2019, 2020, and 2021. Attached as **Exhibit C** is a true and accurate copy of the Personal Property Information for Plaintiff Brad Jackson current as of November 13, 2024.

**PLAINTIFF'S RESPONSE: Admit.**

4. On multiple occasions, Plaintiff has bragged to audiences of his concerts that he does not pay his personal property taxes, and as a result has had up to 14 warrants issued for his arrest. Below is a true and accurate transcription of the audio file, provided by Defendants Bethel and Chosich in their Rule 26 initial disclosures, of Plaintiff Brad Jackson during a live show:

   a. **Plaintiff:** So in Missouri, we have a thing that's called personal property tax. Timmy, let me get a little storytelling tippity tap. Yeah, I appreciate it. (laughter). We have a thing in St. Louis or in Missouri that's called personal property tax, and it is a tax. It's unlike property tax. This is a tax that you pay every single year on shit that you already own. And, and it's different. It's for your car, for your RV, for things like that, but primarily for your car. And it won't let you get your license plates renewed until you paid your personal property tax. And if you have anything resembling a reliable vehicle, it's just $1,400 a year or so. And it's nonsense. It's absolute nonsense. And so if you're punk rock like me, you don't pay it, and then you wind up with 14 warrants, and then it's New Year's Eve, and there's a cop behind you on your way to a party. And that's what this song is about. Let's go.

**PLAINTIFF'S RESPONSE: Admit.**

5. Plaintiff has made a public Facebook post acknowledging that he does not pay child support. Attached as **Exhibit D** is a redacted, true and accurate copy of a post made by Plaintiff on Facebook.

2

**PLAINTIFF'S RESPONSE: Denied.** Plaintiff Jackson has never been subject to any child support order, and so cannot pay "child support" in the meaning that term is provided by Missouri law. See Affidavit of Brad Jackson ¶ 6; See also Exhibit 8, Redacted Paternity Judgement.

6.  On August 16, 2023, Donald L. Loomstein filed a Petition in Rent and Possession against Plaintiff and Roughneck Beard Co., LLC with case number 23SL-AC22841 for unpaid rent in the amount of $3,400.00. On September 11, 2023, a Default Judgment was issued against Plaintiff. Attached as **Exhibit E** is a true and accurate copy of the Default Judgment filed against Plaintiff and Roughneck Co., LLC.

**PLAINTIFF'S RESPONSE: Admit.**

7.  As shown in Plaintiff's Motion for Default Judgment, and Exhibit 1 thereto, Plaintiff offered to sell marijuana and mushrooms which were "in the grill." Plaintiff referred to this as an "authentic text message" in ¶ 3 of his Motion for Default Judgment.

**PLAINTIFF'S RESPONSE:** Admit that the document makes that allegation. Deny that this statement amounts to an uncontroverted fact for the purposes of Rule 56. Although the judgement itself may be admissible, the statements contained in pleadings offered in support of the allegation are inadmissible hearsay. See e.g. State Farm Fire and Casualty Company v. Air Vents, Inc. (State Farm Fire and Casualty Company v. Air Vents, Inc., 577 F.Supp.3d 941,950 (2021). ("A court cannot consider inadmissible hearsay when

3

deciding a motion for summary judgment because it can only assess the evidence on which a jury could rely, and a jury cannot properly rely on inadmissible hearsay.")

**DEFENDANT'S REPLY:** The document is a copy of a message Plaintiff sent to Defendant Chosich, and therefore not hearsay. Chosich Affidavit, ¶ 2.

8.   Plaintiff has provided "menus" of drugs he offered for sale with a list of each product and price, including both marijuana and mushrooms. Attached as **Exhibit F** is a true and accurate copy of such a drug "menu" Plaintiff provided to a Facebook user.

**PLAINTIFF'S RESPONSE: Deny.**

**DEFENDANT'S REPLY:** Plaintiff fails to support his denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial. The Court should accept this as a fact.

### Plaintiff's Additional Material Facts

9.   Defendant Chosich wrote a song about Plaintiff Jackson called "Shittin'4 Thrillz" that he regularly plays at his concerts while displaying a video of Plaintiff Jackson. Affidavit of Brad Jackson at 1, ¶ 3; See also Exhibit 1.

RESPONSE: Defendant Chosich admits that he wrote the song and that on two occasions his band has performed it with videos of Plaintiff displayed in the background. All videos were sourced from publicly available videos on YouTube.

4

10. Defendant Chosich has made the false allegation on at least two occasions online that Plaintiff Jackson's beard oil product contains nothing but olive oil. Affidavit of Brad Jackson at 2, ¶ 4; See also Exhibit 2.

RESPONSE: **Deny.** Chosich has personally prepared beard oil at Plaintiff's request for Roughneck Beard Company to sell which was made of only olive oil and "essential oils." Chosich Affidavit, ¶¶ 3-8.

11. But, Plaintiffs beard oil product is not made from olive oil. Affidavit of Brad Jackson at, ¶ 5.

RESPONSE: **Deny.** Chosich Affidavit, ¶¶ 3-8.

12. Defendant Chosich made the online statement that Brad Jackson doesn't pay child support. See Exhibit 3; Affidavit of Brad Jackson at Paragraph 6.

RESPONSE: **Admit.**

13. Taken in the context of the post, and considering Defendant Chosich's numerous other vitriolic statements about Plaintiff, Chosich's meaning in saying that "Brad Jackson doesn't pay child support" was that Brad Jackson does not pay child support, that he is required to pay. See Exhibit 3.

RESPONSE: **Deny.** Plaintiff is attempting to state his interpretation of Defendant's comment as a fact.

5

14. Brad Jackson is not required to pay child support. See Affidavit of Brad Jackson at 2, ¶ 6-7; See also Exhibit 8, Paternity Judgement.

RESPONSE: **Admit.**

15. Defendant Chosich made a Facebook post that indicated that Brad Jackson was raising money on his go-fund me page to pay for a "coke surgery." See Exhibit 4.

RESPONSE: **Admit.**

16. Brad Jackson does pay his taxes. See Exhibit 12, Compilation Tax Returns.

RESPONSE: **Deny.** SUMF 1 through 4 are all admitted and all show he does not pay his taxes. *See* SUMF 1-4; Chosich's Memo in Support of Motion for Partial Summary Judgment, p. 3-4, Ex. A-C (Doc. 56). Plaintiff has shown that he pays *some* taxes, but he also *does not* pay other taxes.

17. Brad Jackson received 3 surgeries on his nose to repair a congenitally deformed and deviated septum that resulted in lifelong problems with sinus infections. He had to have his tonsils removed, the septum surgically repaired, and a rhinoplasty to allow nose breathing. Affidavit of Brad Jackson at 3, ¶ 9.

RESPONSE: Though Plaintiff's affidavit asserts this fact, he has provided no medical documents to support this claim. Defendant has no knowledge of Plaintiff's medical conditions, therefore denies.

6

18. Defendant Chosich makes the allegation in Exhibit 3 that Plaintiff Jackson "blackmailed" a commissioner with nudes. Exhibit 3.

RESPONSE: **Admit.**

19. But, Defendant Jackson filed the ethics complaint because of ongoing attempts to sleep with him by Chastity Mattox and her husband. Affidavit of Brad Jackson at 8; See also Exhibit 9, Ethics Complaint.

RESPONSE: Defendant Chosich admits that Plaintiff filed an ethics complaint against Chasity Mattox. Defendant Chosich denies the implication that Plaintiff could not have also threatened to release nude photos. *See* Mattox Affidavit, ¶¶ 1-9.

20. Defendant Chosich stated that Brad Jackson manufactured evidence of child sexual abuse. Exhibit 5.

RESPONSE: **Deny.** In regard to the anonymous message chain filed by Plaintiff in Doc 68-9, Defendant Chosich stated, "[t]hese messages could be going between Brad and his burner phone for all we know." Ex. 5 (Doc 68-5). Defendant Chosich simply states the fact that since the sender of the messages is redacted, it is possible that Plaintiff authored these messages.

21. But, Brad Jackson did not manufacture evidence of child sexual abuse. See Affidavit of Brad Jackson; See also Exhibit 11, truncated evidence binder.

7

RESPONSE: **Deny.** Exhibit 11 appears to be exclusively the anonymous messages in question, which does nothing to prove the matter.

22. Defendant Chosich mailed letters to Jackson's friends and family alleging in part that Jackson committed wire fraud with respect to an alleged $5,000.00 donation made to a go-fund-me page supporting a concert venue. See Exhibit 12, 1-2.

RESPONSE: **Deny.** Defendant Chosich has had nothing to do with sending any letter mentioned in this case. Chosich Answer to Amended Complaint, ¶¶ 30-35, 96-98 (Doc. 52).

23. Brad Jackson did not "commit wire fraud" and instead donated money he had received from a regional arts grant to the concert venue. See Affidavit of Brad Jackson ¶ 15-30.

RESPONSE: **Deny.** *See* Defendant Chosich's Reply Sec. c.

## DEFENDANT CHOSICH'S ADDITIONAL FACTS

24. Plaintiff sent Defendant Chosich a message to offer drugs on Facebook stating, "Got you in the grill. Did 28g of shake [marijuana] and a 3.5g chocolate bar [psilocybin]. $200 even if that works for you. Just throw cash on the stack in there. My guy is coming to grab shortly." Chosich Affidavit, ¶ 2.

RESPONSE:

25. Plaintiff stated in his responses to Defendant Bethel's interrogatories that "[f]or a short time, I sold marijuana before it was legal. This is known because Defendant Chosich was a

8

regular recipient. As a friend, he got his for cheap." Attached as **Exhibit G** is a true and accurate copy of the relevant portion of Plaintiff's responses to Defendant Bethel's interrogatories.

RESPONSE:

26. In April 2021, the Exit/In in Nashville, Tennessee launched a campaign on GoFundMe called "KEEP Exit In INDEPENDENT" (the "Campaign"). GOFUNDME, *KEEP Exit In INDEPENDENT*, https://www.gofundme.com/f/preserve-exit-in (October 6, 2025).

RESPONSE:

27. A company called AJ Capital Partners ("AJCP") ended up purchasing the Exit/In and offered to refund any donations made during the Campaign. Paulson, Dave, THE TENNESSEAN, *Exit/In: AJ Capital Partners says they will preserve venue, refund donors*, https://www.tennessean.com/story/entertainment/music/2021/04/09/exit-in-preserve-venue-aj-capital-partners-refund-donors/7166784002/ (April 9, 2021).

RESPONSE:

28. On April 9, 2021, Plaintiff emailed AJCP seeking a refund for his donation to the Campaign. Attached as **Exhibit H** is a true and accurate copy of the email, Bates stamped 1214-1215.

RESPONSE:

9

29.     As part of his request, Plaintiff attached a receipt which appears to show he made a $5,000.00 donation, and that he was seeking a full refund. Attached as **Exhibit I** is a true and accurate copy of the donation receipt provided by Plaintiff to AJCP, Bates stamped 1216.

RESPONSE:

30.     AJCP responded on April 21, 2021, asking Plaintiff to fill out a form in order to process his refund, which he did that same day. Ex. H, p. 1.

RESPONSE:

31.     On May 11, 2021, AJCP confirmed that it had refunded the donation in full to Plaintiff's bank account. *Id*.

RESPONSE:

32.     Plaintiff told Defendant Chosich that he had fabricated the donation receipt, changing it from a donation of $5.00 to make it appear to be a donation of $5,000.00. Chosich Affidavit, ¶ 3.

RESPONSE:

33.     In a message from Plaintiff to Defendant Chosich, Plaintiff stated "Remember when I told you I fabricated that go fund me donation. Lol." Attached as **Exhibit J** is a true and accurate copy of that message.

RESPONSE:

10

34. When asked about the matter in an interrogatory, Plaintiff stated,

> During the Exit/In GoFundMe campaign, I donated a substantial sum, $5,000, because I supported the cause and had the financial means at the time as I had received a grant from the Regional Arts Commission. As a former Nashville resident and long-time touring artist, preserving that venue mattered very much to me. I wanted to pay it forward. I'd received a grant from the RAC, and thought it was the best way to make use of that. After the property was sold to a private developer, the group publicly promised to return all donations. I received my refund directly from the corporation, as offered to all donors.
>
> Around that time, I mentioned the refund to a friend and it drew questions from Chosich. I made a tongue in cheek comment about the "scam" of covid. The reality is far less dramatic: I simply didn't want him to know I had money. I had loaned Chosich money on multiple occasions, and he had a well-known habit of asking people for financial favors. I made the remark as more of a joke to imply it was not money I intended to keep. It was deceptive, yes, but not malicious. It was more of a joke than something I ever expected to be taken seriously…
>
> Not only was the joke never intended to deceive him long-term, but I also told him in person - on more than one occasion - that it wasn't true, and that the donation had been real. Despite that, Defendant Chosich has continued to take the comment out of context and used it to falsely accuse me of wire fraud. That accusation is baseless…
>
> The idea that a multi-million-dollar development conglomerate could be tricked by a fabricated GoFundMe screenshot is laughable. But he believed it. That was the extent of it. No fraud occurred, no misrepresentation was made to the company, and the refund was legitimate and voluntary.

RESPONSE:


35. Plaintiff, in his Affidavit filed on September 15, 2025 (Doc. 75-1) again states that he donated $5,000.00 to the Exit/In. Jackson Affidavit, ¶¶ 16-29.

RESPONSE:


36. Plaintiff admits that the receipt he provided to Defendants through discovery was fabricated by him. Jackson Affidavit, ¶ 24.

11

RESPONSE:

37. Defendant Chosich, through counsel, has confirmed with a representative of AJCP that the email Plaintiff sent to request his refund used the same fabricated receipt as his proof of donation. *See* Exs. H, I; attached as **Exhibit K** is a true and accurate copy of the correspondence to AJCP.[1]

RESPONSE:

38. Plaintiff receives funding from the Regional Arts Commission of St. Louis in the amount of $1,000.00, not $5,000.00. Attached as **Exhibit L** is a true and accurate copy of email exchange with the RAC custodian of records.[2]

RESPONSE:

39. On the GoFundMe page for this Campaign the donation amounts are publicly posted and indicate that Plaintiff's only donation to this campaign was for $5.00, not $5,000.00. Attached as **Exhibit M** is a true and accurate screenshot of the donation record for Plaintiff.

RESPONSE:

---

[1] At the time of this filing, Defendant has sought an affidavit from AJCP but due to the short time to file his Reply is still awaiting response.
[2] At the time of this filing, Defendant has sought an affidavit from the RAC but due to the short time to file his Reply is still awaiting response.

12

40.     GoFundMe's business records expressly state that Plaintiff only donated $5.00, not $5,000.00, to the Campaign.[3] Attached as **Exhibit N** is a true and accurate copy of the business records and Certification of Records from GoFundMe Inc

RESPONSE:

41.     On December 12, 2024, the Maplewood City Counsel held a meeting to vote whether to confirm Amber Whitycombe to the counsel. Mattox Affidavit, ¶ 2.

RESPONSE:

42.     Ms. Mattox, a counsel member, was opposed to the confirmation. *Id.* at ¶¶ 1, 3.

RESPONSE:

43.     Ms. Mattox's position on this confirmation was publicly known, and Plaintiff was very upset by her holding out on the confirmation. *Id.* at ¶¶ 4-5.

RESPONSE:

44.     In a Facebook post Plaintiff stated "you don't want me dropping receipts about that one. But trust, I've got ALLLLLL the receipts. The pictures sent, . . . Might want to stop pushing that angle, it doesn't go where you think it does." Attached as **Exhibit O** is a true and accurate copy of this Facebook post by Plaintiff.

RESPONSE:

---

[3] The online records show one donation of $5,000.00 made anonymously. As can be seen in Exhibit E, this donation was not made by Plaintiff Brad Jackson.

13

45. In a Facebook post Plaintiff stated "I don't give a shit what y'all think of me, or how two faced each of you are, but I have the screenshots of Chasity harassing me and asking for sex for 2 years and me declining each time. There are several community members aware of it as well. Reign your boy in or I'm gonna share them publicly." Attached as **Exhibit P** is a true and accurate copy of this Facebook post by Plaintiff.

RESPONSE:

46. Plaintiff was removed and blocked from the Maplewood MO Facebook group that evening by the group's moderators. Mattox Affidavit, ¶ 8.

RESPONSE:

47. Ms. Mattox was informed by friends and family that Plaintiff had threatened to release nude photos of her. Mattox Affidavit, ¶¶ 6-7.

RESPONSE:

48. Defendant Chosich, while he and Plaintiff were still friendly, worked at Roughneck from August 23, 2019 to March 13, 2020. Chosich Affidavit, ¶ 4.

RESPONSE:

49. As an employee of Roughneck, Defendant Chosich prepared some of the beard oil products. *Id*. at ¶ 5.

RESPONSE:

50. On December 9, 2019, there was an event in Maplewood called the Christmas Tree Walk. *Id*. at ¶ 6.

RESPONSE:

51. For this event, Plaintiff asked Defendant Chosich to assist him in making beard oils which Plaintiff and Merril Barden would sell on the sidewalk. *Id*. at ¶ 7.

RESPONSE:

52. On that occasion Plaintiff instructed Defendant Chosich to pour olive oil into brown bottle vessels and to top each off with a couple drops of "essential oils." *Id*. at ¶ 8.

RESPONSE:

53. There were several variations of these "essential oils" added and were given different product names. *Id*. at ¶ 9.

RESPONSE:

54. Defendant Chosich has no knowledge of the names and addresses of the parents of other children in Plaintiff's child's class or the teachers at Plaintiff's child's school. Chosich Affidavit, ¶ 10.

RESPONSE:

55. In 2019 and 2025, Plaintiff ran for the Maplewood School Board. *Id*. at ¶ 11.

RESPONSE:

15

56. Plaintiff is also the lead singer of a band called The Fighting Side which is known locally, performs and sells music nationally, grants interviews to news and radio media, invites public attention to themselves and their views, and are generally known to a wide audience. *Id*. at ¶¶ 12-14.

RESPONSE:

Respectfully submitted,

**GARLAND LAW, P.C.**

*/s/ Michael D. Garland*
Michael D. Garland, #74663(MO)
101 W. Argonne Ave. #202
Kirkwood, MO 63122
Tel: 314-332-6228
Email: michael@garlandlawpc.com

***Attorney for Defendant Isaac Chosich***

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of October 2025, I electronically filed the foregoing via the Court's ECF electronic filing system, which sent notification of such filing to all counsel of record. I further certify that I signed, or caused my electronic signature to be placed upon, the original of the foregoing document.

*/s/ Michael D. Garland*
