# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| **BRAD JACKSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 4:24-CV-01207-NCC** |
| ) | |
| ) | |
| **BARRY GREENBERG, KATE BETHEL, and** ) | |
| **ISAAC CHOSICH,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Defendant Isaac Chosich's ("Chosich") Motion for Partial Summary Judgment[1] (Doc. 56). The motion is fully briefed and ready for disposition. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 28). For the following reasons, Chosich's Motion will be **GRANTED IN PART and DENIED IN PART**.

As an initial matter, the Court clarifies the materials under consideration in this ruling. Plaintiff filed a Memorandum in Opposition (Doc. 70) and Chosich filed a Reply (Doc. 74). Plaintiff was subsequently granted leave to correct a defective filing and add to the record Plaintiff's affidavit (Doc. 75), and Chosich was granted leave to refile his Reply because of that correction (Doc. 85). Soon after entering the case, Plaintiff's new counsel was granted leave to file a supplemental brief regarding "Additional Facts" in Defendant Chosich's Reply in Support

---

[1] Although Chosich's motion is for "partial" summary judgment, the Court has dismissed Count X (Doc. 61), and the Court agrees with Chosich that this motion addresses all remaining claims against him (*see* Doc. 85 at 1).

of Summary Judgment (Doc. 97).  Chosich responded with a Request for Oral Argument and Memorandum in Support (Doc. 100).

On January 7, 2026, the Court heard argument from the parties (Doc. 104).  At issue in the additional briefing and oral arguments is whether the Court may consider, for the purposes of this motion, "Additional Facts" submitted by Chosich as part of his Reply without first allowing Plaintiff to file a sur-reply (*see* Doc. 97).  Plaintiff argues that the "Additional Facts" encompass more than 30 paragraphs of issues not previously raised in the Statement of Uncontroverted Facts and that he would be prejudiced if the Court considers any of them without giving him a chance to respond to each (*id*.).

Chosich asserts that the Court should consider the "Additional Facts," because they are submitted in response to new allegations made by Plaintiff in his Response (Doc. 100).  Chosich asserts Plaintiff would not be prejudiced by consideration of these additions because Plaintiff introduced the arguments and therefore cannot claim he was not on notice they were at issue (*id*.).  Notably, Chosich concedes that the theory that Plaintiff is a public figure and has failed to plead "actual malice" was not raised initially in his motion (Doc. 100 at 4).  Chosich withdraws Facts 55 and 56, which relate to this theory (*id.*).  Chosich also withdraws Fact 54, relating to Plaintiff's allegations that Chosich was responsible for a campaign of letters, stating that no claims regarding this subject are currently before the Court (*id*.).  With respect to the other additional facts, Chosich argues that if the Court determines his "Additional Facts" should not be considered, it should also refuse to consider Plaintiff's additional facts which do not address facts or arguments made in Chosich's Motion for Summary Judgment (*id*.).

 "[U]nder the Federal Rules of Civil Procedure, the issues presented must be properly pled before the court."  *Allan v. Minnesota Dep't of Hum. Servs.*, 127 F.4th 717, 720 (8th Cir.

2025), *cert. denied*, No. 24-1140, 2025 WL 2823728 (U.S. Oct. 6, 2025) (citing Fed. R. Civ. P. 8(a)).  Although complaints are liberally construed, "the essential function of notice pleading is to give the defendant fair notice of what the claim is and the grounds upon which it rests." *WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 897 F.3d 987, 992 (8th Cir. 2018) (modified).  "Thus, while we recognize that the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment." *N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004); *see also Engen v. Bd. of Trs. of Univ. of Arkansas*, No. 5:24-CV-05180, 2025 WL 3063868, at *3 (W.D. Ark. Nov. 3, 2025) ("The Eighth Circuit generally does not permit parties to assert new claims in opposition to summary judgment.").

Further, "the liberal pleading of Rule 8 'does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint.'" *Engen*, 2025 WL 3063868, at *3 (quoting *Bragg v. Husqvarna Forestry Products, N.A. Inc.*, No. 4:20-cv-4054, 2021 WL 2346012, at *3 (W.D. Ark. June 8, 2021)).  The Eighth Circuit has similarly refused to consider matters construed as "new grounds" for previously pled claims raised for the first time in summary judgment briefs, "reasoning that the plaintiff's complaint was specific as to the 'nature, bases, and grounds' of its original . . .  claims, and that the defendant 'was not required to intuit additional theories of liability that were not apparent' from the complaint." *Id.* (quoting *WireCo*, 897 F.3d at 993).

In the case at bar, Plaintiff's Amended Complaint contains a chart listing three specific statements made by Chosich which Plaintiff alleges were defamatory (Doc. 48 at 16).  Plaintiff's defamation claims are specific as to the nature and bases, as listed in that chart, and any

additional claims Plaintiff attempts to raise in his Response to Chosich's motion will not be considered by the Court.  Chosich is not required to "intuit additional theories of liability" outside of the charted statements Plaintiff presented as his defamation claims.  *See Engen*, 2025 WL 3063868, at *3.  Correspondingly, with respect to Chosich's Reply brief, the Court will neither consider additional materials that respond to claims outside of those included in the Amended Complaint, nor will it consider new arguments or facts raised for the first time.  *See First Baptist Church v. Zurich Am. Ins. Co*., 129 F.4th 488, 494 (8th Cir. 2025) (remanding case decided on summary judgment for "further development considering the factual and legal questions raised in [the prevailing party's] reply brief that left [the losing party] without adequate opportunity to respond."); *Montgomery v. City of Ames*, 749 F.3d 689, 697 (8th Cir. 2014) ("A district court commits reversible error by granting summary judgment on an issue not raised or discussed by the parties if the losing party did not have notice and an opportunity to respond.").  With this matter resolved, the Court proceeds to the merits.

## I.  Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).  Once the moving party demonstrates that there is no genuine issue of material fact, the nonmovant must do more than show there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing a genuine factual dispute that must be resolved at trial.

4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324.  "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson*, 477 U.S. at 248).  In ruling on a motion for summary judgment, all reasonable inferences must be drawn in a light most favorable to the nonmoving party.  *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005).  "Though we are required to make all reasonable inferences in the non-movant's favor while reviewing the facts, we are not required to 'accept unreasonable inferences or sheer speculation as fact.'"  *Klum v. City of Davenport*, No. 24-2165, 2025 WL 2167879, at *2 (8th Cir. July 31, 2025) (quoting *Gilani v. Matthews*, 843 F.3d 342, 347, 349 (8th Cir. 2016)).  The evidence is not weighed, and no credibility determinations are made.  *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## II.  Background

On July 31, 2024, Plaintiff filed a Petition in the Circuit Court of St. Louis County, Missouri, 21st Judicial Circuit, Cause No. 24SL-CC03556, alleging First and Fourteenth Amendment violations and conspiracy pursuant to 42 U.S.C. § 1983, and various state law claims including defamation and tortious interference (Doc. 1 at 1-2).  On September 4, 2024, Maplewood, with consent of all defendants, removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446 (*id*. at 1).  On September 11, 2024, Maplewood filed a Motion to Dismiss (Docs. 13, 14).  After briefing on the motion, the Court granted Plaintiff's request for leave to file a First Amended Complaint (*see* Docs. 42, 47).  Plaintiff's First Amended Complaint includes the following claims: First Amendment retaliation pursuant to 42 U.S.C. §1983 against Maplewood and Greenberg in his individual and official capacity (Count I); defamation against Chosich (Counts II-VII); defamation against Bethel (Counts VIII); intentional

infliction of emotional distress against Bethel (Count IX); and conspiracy to deprive Plaintiff of constitutional rights pursuant to 42 U.S.C. § 1985(3) against all Defendants (Count X) (Doc. 48). Maplewood filed a Motion to Dismiss Counts I and X of the Amended Complaint (Doc. 49), which the Court granted, dismissing Count I as to Maplewood, Count X as to all Defendants, and resulting in Maplewood being entirely dismissed from the action (Doc. 61). As it stands, only Counts II-VII remain against Chosich.

## A. Facts[2]

Plaintiff and Defendants are residents of St. Louis County, Missouri (Doc. 52 at 1-2). Plaintiff owns Roughneck Grooming & Beard Co. ("Roughneck") and opened a storefront in Maplewood in 2016 (*id.* at 7). In 2020, Plaintiff helped campaign for Nikylan Knapper ("Knapper"), a mayoral candidate running against then current mayor, Defendant Barry Greenberg ("Greenberg") (*id.* at 7-8). Knapper became mayor of Maplewood in 2021 (*id.* at 10). Knapper appointed Plaintiff to the sustainability commission and to be a commissioner on the Maplewood Planning and Zoning Commission (*id.* at 11). Greenberg ran against Knapper in the next mayoral election, winning reelection in April 2024 (*id.* at 13).

In 2024, Defendant Kate Bethel ("Bethel") filed an ethics complaint against Plaintiff, and the City of Maplewood conducted an ethics investigation (*id.* at 14-15). On May 9, 2024, Plaintiff submitted evidence to the Ethics Review Committee (*id.* at 15). The same day, Greenberg forwarded Plaintiff's evidence to Bethel, who then forwarded it to Chosich (*id.* at 15-16). On May 10, 2024, Chosich posted the evidence on Facebook, and in the same post, chastised Plaintiff, stating that Plaintiff falsified allegations of sexual assault he previously made

---

[2] These facts are taken from the parties' statements of fact (Docs. 56-2, 68) and attached exhibits, as well as facts admitted in Chosich's Answer to Plaintiff's First Amended Petition (Doc. 52).

against another individual (*id.*).  The same day, the Ethics Review Committee dismissed the

complaint against Plaintiff (*id.* at 16).

In May of that same year, Chosich made statements on Facebook that are the basis of

Plaintiff's claims against him.  Plaintiff's Counts II-VII are labeled "Defamation Against

Chosich," and the following statements are listed:

> **Counts II, III:** "I find it pretty wild and embarrassing that a dude who doesn't have a job, doesn't pay taxes, doesn't pay rent, doesn't pay child support, and uses all of his free time to destroy people's lives on the internet gets to sit on two boards and make decisions regarding everyone." (dated May 6, 2024, Facebook).

> **Counts IV, V:** "Crazy that Brad Jackson, a drug dealer, who sells drugs out of a bbq grill on his front porch, from the house he rents is on two city boards. Dude doesn't even pay taxes or have a real job. He sits in his basement on Facebook constantly stirring up bullshit, chain smoking cigarettes. I guess he's got some extra time on his hands for all this since he's raised enough money on go fund me for his Coke surgery." (dated May 7, 2024, Facebook).

> **Counts VI, VII:** "[Brad Jackson is a] 40 year old dude that has nothing to do then [sic] slander other people to stay relevant and gaslight people into doing the dirty work for him. It's sad and straight mentally ill behavior. I'd say get help but I'd rather him fuckin' drop dead. If the law doesn't catch up with him the heart attack will." (dated May 12, 2024, Facebook).

(Doc. 48 at 16).  Plaintiff alleges the statements are false, that Chosich made them with the

knowledge that they are false or with reckless disregard for their truth or falsity, that they were

made with the intention of causing emotional distress to Plaintiff, that they are extreme and

outrageous, and were made with the intention to harm Plaintiff and his reputation (*id.* at 17).

Finally, Plaintiff alleges he has suffered significant economic repercussions, including the loss of

the storefront for his business, and diminished sales and employability (*id.*).

Chosich presumes that Counts II, IV, and VI, refer to defamation claims for the

statements listed, while Counts III, V, and VII are claims of Intentional Infliction of Emotional

Distress ("IIED") against him (Doc. 56-1 at 3 n.1).  Plaintiff's Amended Complaint lacks clarity

because it titles the claims "Counts 2-7 Defamation Against Chosich," lists the allegedly

defamatory statements in a chart, and merely affixes additional numbers to those statements

without further elaboration (Doc. 48 at 16).  Chosich's conclusion is based on similar counts

against Bethel (Doc. 56-1 at 3 n.1).  In his Response, Plaintiff neither corrects nor disputes

Chosich's interpretation, and the Court will, therefore, analyze them as such (*see* Doc. 70).

### III. Discussion

Chosich argues he is entitled to summary judgment on the three defamation claims

because the allegedly defamatory statements are either true, substantially true, or statements of

opinion (Doc. 56 at 1).  He also asserts he is entitled to summary judgment on the IIED claims

because they are based solely on the underlying defamation and therefore fail as a matter of law

(*id*.).  The Court will examine each of the three defamatory statements that form the basis of the

defamation claims in turn, before turning to the IIED claims.

### A.  Count II

Count II consists of Chosich's statement made via Facebook on May 6, 2024:

> "I find it pretty wild and embarrassing that a dude who doesn't have a job, doesn't
> pay taxes, doesn't pay rent, doesn't pay child support, and uses all of his free time
> to destroy people's lives on the internet gets to sit on two boards and make
> decisions regarding everyone."

(Doc. 48 at 16).  Chosich argues the statement is true, substantially true, or privileged opinion

(Doc. 56-1 at 2-6).  Plaintiff responds that the statements that Plaintiff "doesn't have a job,

doesn't pay taxes, doesn't pay rent, [and] doesn't pay child support," are demonstrably false

(Doc. 70 at 2).

"Defamation law protects an individual against harm to his or her reputation."  *Smith v.

Humane Soc'y of United States*, 519 S.W.3d 789, 798 (Mo. banc 2017) (citing *Henry v.

Halliburton*, 690 S.W.2d 775, 779 (Mo. banc 1985)).  To prevail on a defamation claim under

Missouri law, a plaintiff must show "(1) publication (2) of a defamatory statement (3) that

identifies the plaintiff, (4) that is false, (5) that is published with the requisite degree of fault, and

(6) that damages the plaintiff's reputation." *Turntine v. Peterson*, 959 F.3d 873, 882 (8th Cir. 2020) (citing *Overcast v. Billings Mut. Ins.*, 11 S.W.3d 62, 70 (Mo. 2000)).

A defamation defendant may assert three types of defenses: "(1) truth, which 'may always be asserted as an absolute defense'; (2) absolute privilege, such as statements made during judicial proceedings; and (3) conditional or qualified privilege." *McClanahan v. Anti-Defamation League*, No. 23-05076-CV-SW-JAM, 2023 WL 8704258, at *4 (W.D. Mo. Dec. 15, 2023) (quoting *Halliburton*, 690 S.W.2d. at 780); *see also Nigro v. St. Joseph Med. Ctr.*, 371 S.W.3d 808, 818 (Mo. App. W.D. 2012) ("[T]ruth is an *absolute* defense to a defamation claim."). "[F]or the purposes of defamation, it does not matter whether a statement was made in bad faith, so long as it was true." *Id*. (citing *Nigro*, 371 S.W.3d at 818). Further,

> [t]he test is whether the challenged statement is substantially true, it is not necessary that the precise facts disclosed be literally true. Slight inaccuracies are immaterial if the allegedly defamatory charge is true in substance. A person is not bound to exact accuracy in his statements about another, if the statements are essentially true. A substantially true statement contains the same "sting" as the truth, which means that the plaintiff's damage would have been the same irrespective of whether the defendant stated the truth or the substantial truth.

*Id.* (modified).

"The First Amendment also gives rise to the absolute privilege accorded statements of opinion, which even if made maliciously or insincerely, do not give rise to a defamation cause of action." *McClanahan*, 2023 WL 8704258, at *4 (citing *Pape v. Reither*, 918 S.W.2d 376, 380 (Mo. Ct. App. 1996)). "[T]he United States Supreme Court has held there can be no liability under state defamation law for statements of opinion." *Id*. (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974)).

The Missouri Court of Appeals recently expounded upon the opinion analysis:

"The First Amendment's guarantee of freedom of speech makes expressions of opinion absolutely privileged. Whether an alleged statement is capable of being

9

treated as an opinion or as an assertion of fact is a question of law[.]" *Nazeri v. Mo. Valley College*, 860 S.W.2d 303, 314 (Mo. 1993); *see also Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 72 (Mo. 2000) ("the determination of whether the defense of absolute or qualified privilege exists is a question for the court"). However, a statement framed as an "opinion" can be the basis of a defamation claim "when the statement of opinion implies the existence of undisclosed defamatory facts." *Castle Rock*, 354 S.W.3d at 241; *see also Smith v. Humane Society*, 519 S.W.3d 789, 799-800 (Mo. 2017) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990)). Terms that constitute "imaginative expression" or "rhetorical hyperbole" are not generally defamatory. *Nazeri*, 860 S.W.2d at 314.

To determine whether an ordinary reader would treat the statement as an opinion, we examine the totality of the circumstances. *Henry v. Halliburton*, 690 S.W.2d 775, 788 (Mo. 1985). This includes analyzing the common usage or meaning of the statements, as well as the broader, situational context in which the statement appears. *Id.* For instance,

> apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole[.]

*Id.* at 787 (cleaned up). Moreover, even statements which ostensibly accuse another of criminal conduct may constitute statements of opinion, since – when viewed in context – such statements may be merely an assertion "that the defendant disagrees with the plaintiff's conduct and used pejorative statements or vituperative language to indicate his or her disapproval." *Id.* at 788-89; *see also Ribaudo v. Bauer*, 982 S.W.2d 701, 705 (Mo. App. E.D. 1998) ("'A statement that refers to criminal conduct must be examined in context in order to determine whether the reader would be left with the impression that the plaintiff was being accused of a crime or that the defendant disagreed with the plaintiff's conduct and used pejorative statements or vituperative language to indicate his or her disapproval.'" (quoting *Diez v. Pearson*, 834 S.W.2d 250, 252 (Mo. App. E.D. 1992))).

*Totta v. CCSB Fin. Corp.*, 695 S.W.3d 197, 204–05 (Mo. Ct. App. 2024), *reh'g and/or transfer denied* (July 23, 2024), *transfer denied* (Sept. 3, 2024). The Court will examine separate portions of the statements in turn.

10

### 1.   Statement that Plaintiff does not have a job

Chosich does not address this portion of the statement specifically, but generally argues the statement is true, substantially true, or a matter of opinion.  It is undisputed that Plaintiff "is the owner and operator of Roughneck Beard Company, a legitimate business" (Doc. 70 at 2). Accordingly, Chosich's statement that Plaintiff "does not have a job" is patently false, and the truth defense does not apply.  To the extent Chosich argues this statement is an opinion, the Court disagrees.

 "Whether a statement is fact or opinion is a question of law, and we make this determination based on the totality of the circumstances surrounding a given statement." *Clinch v. Heartland Health*, 187 S.W.3d 10, 17–18 (Mo. Ct. App. 2006) (citing *Halliburton*, 690 S.W.2d at 787, 788-89).  A purported opinion becomes a fact if it is verifiable. *Id*. at 18.

Chosich does not argue that whether Plaintiff has a job is subjective or unverifiable.  He neither disputes that he runs a legitimate business, nor argues the context of the statement renders it an opinion.  Moreover, whether Plaintiff has a job is a verified fact, and therefore does not qualify as privileged opinion.  Accordingly, Chosich is not entitled to summary judgment as to this portion of Count II.  Because Chosich's motion only addresses whether this portion of the statement is true, substantially true, or opinion, the Court will not consider, at this time, whether it meets the remaining elements of a defamation claim.

### 2.   Statement that Plaintiff does not pay taxes

Chosich asserts the statement that Plaintiff "does not pay taxes" is true or substantially true based on the following evidence: a Certificate of Tax Lien against Plaintiff filed by the Missouri Department of Revenue for his failure to pay taxes dated September 23, 2016 (Doc. 56-3); a Certificate of Tax Lien against Plaintiff filed by the Missouri Department of Revenue for

his failure to pay taxes dated April 14, 2017 (Doc. 56-4); and the St. Louis County Personal

Property Information website search dated December 12, 2024, showing Plaintiff owed back

taxes for the years 2019, 2020, and 2021 (Doc. 56-5).  Chosich also asserts that Plaintiff has

bragged to audiences of his concerts that he does not pay his personal property taxes, which has

resulted in up to 14 warrants issued for his arrest (Doc. 56-1 at 3-4).  Defendant Kate Bethel, in

her Rule 26 disclosures, provided the following transcription of an audio file of Plaintiff during a

live show:

> **Plaintiff**: So in Missouri, we have a thing that's called personal property tax . . .
> It's unlike property tax. This is a tax that you pay every single year on shit that
> you already own. And, and it's different. It's for your car, for your RV, for things
> like that, but primarily for your car. And it won't let you get your license plates
> renewed until you paid your personal property tax. And if you have anything
> resembling a reliable vehicle, it's just $1,400 a year or so. And it's nonsense. It's
> absolute nonsense. And so if you're punk rock like me, you don't pay it, and then
> you wind up with 14 warrants, and then it's New Year's Eve, and there's a cop
> behind you on your way to a party. And that's what this song is about. Let's go.

*Id*.  Plaintiff admits these facts and makes no attempt to controvert them (Doc. 68 at 1-3).

To begin with, statements that reflect a plaintiff's own words are non-actionable, and

Plaintiff unequivocally told an audience that he does not pay property taxes.  *See McClanahan*,

2023 WL 8704258 at *6 ("[T]hese statements are non-actionable, as they reflect Plaintiff's own

words.").  Further, Chosich provided uncontroverted evidence that his statement that Plaintiff

does not pay taxes is true.  Although Plaintiff submitted his federal income tax returns for the

years 2015-2024 to show he pays federal income taxes (Doc. 68-11), Chosich's statement is not

thereby rendered false.  Chosich's statements remain, at the very least, substantially true.  *See*

*Totta*, 695 S.W.3d at 208 (citing *Nigro*, 371 S.W.3d at 818) (The court asks "only whether the

statements are *substantially* true.").  Accordingly, Chosich has established an absolute defense to

defamation with respect to the statement that Plaintiff "doesn't pay taxes."  *See Nigro*, 371

S.W.3d at 818 ("[T]ruth is an *absolute* defense to a defamation claim."). Chosich is entitled to

summary judgment as to this portion of the statement in Count II.

### 3.   Statement that Plaintiff does not pay rent

Chosich asserts the statement that Plaintiff "doesn't pay rent" is true or substantially true

(Doc. 56-1 at 4).  Chosich provided undisputed evidence of Plaintiff's failure to pay rent via

court records showing that on August 16, 2023, Donald L. Loomstein filed a Petition in Rent and

Possession against Plaintiff and Roughneck Co., LLC, case number 23SL-AC22841 for unpaid

rent in the amount of $3,400.00. (Doc. 56-7).  On September 11, 2023, a Default Judgment was

issued against Plaintiff (*id*. at 2).  These facts are uncontroverted (Doc. 68 at 3-4).  Accordingly,

the statement that Plaintiff "doesn't pay rent" is at minimum substantially true, and Chosich has

established an absolute defense to defamation with respect to this statement. *See Nigro*, 371

S.W.3d at 818.  Chosich is entitled to summary judgment as to this portion of the statement in

Count II.

### 4.   Statement that Plaintiff does not pay child support

Chosich asserts that any statement that Plaintiff does not pay child support is true or

substantially true (Doc. 56-1 at 4).  Chosich supports his argument with Plaintiff's own Facebook

post acknowledging that he does not pay child support (Doc. 56-6).  In that post, Plaintiff states

"I don't pay child support because I have custody of my kids.  I don't owe child support.  That's

just called being a father."  Doc. 56-6.  In his response, Plaintiff asserts that he is not ordered to

pay child support and therefore cannot pay "child support" within the meaning of that term as

provided by Missouri law, and that Chosich's statement implies a legal duty and its nonpayment

(Doc. 68 at 3, Doc. 70 at 8).  Plaintiff also provides a Paternity Judgment showing he is not

required to pay child support (Doc. 68-7 at 17-18, 20).

Plaintiff verified by his own statement that he does not pay child support.  *See McClanahan*, 2023 WL 8704258 at *6 (statements that reflect a plaintiff's own words are non-actionable).  Further, although substantial truth is enough for the truth defense to apply, and "[i]t is not necessary that the precise facts disclosed be literally true," Chosich's statement regarding child support is the literal truth.  *See Nigro*, 371 S.W.3d at 818.

Plaintiff's attempt to have the Court analyze Chosich's statement regarding child support as an opinion implying underlying facts is misplaced (*see* Doc. 70 at 8).  In *Nazeri*, the Court explains that "[t]he test to be applied to an ostensible 'opinion' is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact."  860 S.W.2d at 314.  Chosich argues, however, that the statement is one of fact that is true, rendering the opinion analysis inapposite.  *See Others First Inc. v. Better Bus. Bureau of Greater St. Louis, Inc*., 105 F. Supp. 3d 923, 930, 932 (E.D. Mo. 2015), *aff'd*, 829 F.3d 576 (8th Cir. 2016) (reasoning when analyzing a statement, the Court strips the words of any pleaded innuendo, construes them in their most innocent sense, considers them in context, and gives them their plain and ordinarily understood meaning).

Further, while the Court recognizes Chosich could have described more precisely the legal climate of Plaintiff's custody or support arrangements, the statement is, nevertheless, true.  *See Totta*, 695 S.W.3d at 212 (a statement that a lawsuit was dismissed by the courts as lacking merit where in actuality the defendants were granted summary judgment, and the case was ultimately resolved via settlement on appeal was still substantially true despite the lack of explanation regarding the settlement and imprecise legal terms).  Further, any potential bad faith on Chosich's part in making the statements pertaining to child custody does not change the outcome.  *See Nigro*, 371 S.W.3d at 818 ("[F]or the purposes of defamation, it does not matter

whether a statement was made in bad faith, so long as it was true.").  Chosich is entitled to summary judgment as to this portion of the statement in Count II.

### 5.  Remaining statements within Count II

Chosich asserts the remainder of the statements in Count II, "and uses all his free time to destroy people's lives on the internet gets to sit on two boards and make decisions regarding everyone" is nonactionable opinion (Doc. 56-1 at 4-6).  Plaintiff does not dispute the characterization of this portion of the statement (*see* Doc. 70).  What constitutes "all his free time" as well as what it means to "destroy people's lives on the internet" is non-specific, subjective, and not clearly verifiable.  This portion of the statement is most accurately characterized as fiery rhetoric or rhetorical hyperbole.  *See Totta*, 695 S.W.3d at 204–05 (quoting *Nazeri*, 860 S.W.2d at 314) ("Terms that constitute 'imaginative expression' or 'rhetorical hyperbole' are not generally defamatory.").  Considering the totality of the circumstances including the common usage of the statements and the broader situational context, an ordinary reader would treat this statement as an opinion.  *See id.*  Accordingly, Chosich is entitled to summary judgment as to this portion of the statement in Count II.

### B.  Count IV

Count IV consists of Chosich's statement via Facebook on May 7, 2024:

> "Crazy that Brad Jackson, a drug dealer, who sells drugs out of a bbq grill on his front porch, from the house he rents is on two city boards. Dude doesn't even pay taxes or have a real job. He sits in his basement on Facebook constantly stirring up bullshit, chain smoking cigarettes. I guess he's got some extra time on his hands for all this since he's raised enough money on go fund me for his Coke surgery."

(Doc. 48 at 16).  Chosich asserts the entire statement is either true, substantially true, or a statement of opinion (Doc. 56).  Plaintiff argues that statements that he doesn't pay taxes or have a job are demonstrably false (Doc. 70 at 2).  Further, Plaintiff submits an affidavit admitting to

offering to sell drugs to Chosich but argues it doesn't support Chosich's characterization of him as a "drug dealer" (Doc. 70 at 3).[3]  Finally, Plaintiff argues the statement that he raised money via GoFundMe for "coke surgery" is entirely false (Doc. 70 at 3-4).

The Court has already determined that the statement that Plaintiff does not pay taxes is, at minimum, substantially true, entitling Chosich to summary judgment as to this portion of the statement in Count IV.  The Court will consider the remainder of the statements included in Count IV below.

### 1. Statement that Plaintiff is a "drug dealer, who sells drugs out of a bbq grill on his front porch from the house he rents"

Chosich asserts that any statement related to Plaintiff having sold drugs is true or substantially true (Doc. 56-1 at 4).  In support of his position, Chosich points to Plaintiff's earlier filed Motion for Default Judgment (Doc. 20).  Plaintiff attached an exhibit including text messages Plaintiff referred to as "authentic text messages between Defendant Chosich and Plaintiff" (Docs. 20 at 1, 20-1).  Within the messages Plaintiff offers to sell marijuana and mushrooms located "in the grill" (Doc. 20-1 at 4).  Chosich also provides evidence that Plaintiff provided "menus" of drugs he offered for sale with a list of each product and price, including both marijuana and mushrooms (Doc. 56-8).

In his Response, Plaintiff argues Chosich's proffered evidence is inadmissible hearsay the Court may not consider (Doc. 68 at 4).  Plaintiff denies he has offered "menus" of drugs he offered for sale (*id.* at 4-5).  In his affidavit, however, Plaintiff states: "Chosich is right that at

---

[3] Plaintiff also argues that calling someone a "drug dealer" and accusing him of selling drugs asserts felony-level conduct, and that false accusations of crime are actionable "*per se*" in Missouri.  In *Nazeri*, the Missouri Supreme Court "held that 'in defamation cases the old rules of *per se* and *per quod* do not apply,'" and "declared that 'plaintiffs need not concern themselves with whether defamation was *per se* or *per quod*' any longer." *Turntine*, 959 F.3d at 885 (quoting *Nazeri*, 860 S.W.2d at 312-313).

one point – 5 years ago and before marijuana dispensaries opened – I offered to sell marijuana and psilocybin mushrooms to him" (Doc. 75-1 at 3 ¶9).  Plaintiff argues he is not a "drug dealer" and that his admission reflects a "single offer" or "isolated incident" (Doc. 70 at 3).  Plaintiff's assertions also contradict Plaintiff's response to Bethel's interrogatories that "[f]or a short time, I sold marijuana before it was legal.  This is known because Defendant Chosich was a regular recipient.  As a friend, he got his for cheap."  Doc. 85-1at 8-9 ¶25, Doc. 85-2.[4]

Chosich's statement that Plaintiff is a "drug dealer" is true or substantially true, as Plaintiff avers in his affidavit that he offered drugs for sale.  Chosich points out that the dictionary definition of "drug dealer" is "a person who sells illegal drugs" (Doc. 85 at 2).  By the common definition, Chosich's statement is true.  Further, even if Chosich's description of Plaintiff's activities may be slightly inaccurate or not perfectly precise, the statement is still substantially true.  *See McClanahan*, 2023 WL 8704258 at *4.  Accordingly, Chosich has established an absolute defense to defamation with respect to this portion of the statement in Count IV.

### 2.  Statement that Plaintiff does not have a "real job"

Chosich's statement that Plaintiff does not have a "real" job, is distinct from the previous statement that Plaintiff "does not have a job."  It is an undisputed fact that Plaintiff is the owner and operator of Roughneck, as noted above (Doc. 70 at 2).  A statement that Plaintiff's job is not "real," however, is a subjective expression of opinion, not a verifiable fact.  It is commonly understood that a statement that a person does not have a "real job" is a colloquial expression reflecting an opinion that the job is unserious, or perhaps lacking in stability, purpose, or income.  Considering the totality of the circumstances including the common usage of the expression "real

---

[4] This is not "new" information to Plaintiff and he cannot claim prejudice based on the Court's consideration of his answer.

job," and the broader situational context, an ordinary reader would treat this statement as an opinion.  Accordingly, Chosich is entitled to summary judgment as to this portion of the statement in Count IV.

### 3.    Statement that Plaintiff raised money on GoFundMe for "coke surgery"

The Court next considers Chosich's statement that Plaintiff "raised enough money on go fund me for his Coke surgery."  Doc. 48 at 16.  Plaintiff argues this statement imputes illegal drug use and fraud (Doc. 70 at 9).  Plaintiff states in his affidavit that he utilized GoFundMe to raise funds because he underwent three consecutive surgeries to repair a deviated septum, remove infected tonsils, and to address lifelong breathing problems (Docs. 70 at 3-4, 75-1 ¶9).  No medical records were provided.  Plaintiff further states that he has never used cocaine and could not do so due to his chronic nasal problems (Docs. 70 at 4, 75-1 at 4).  Chosich points to no evidence that Plaintiff used cocaine.

Chosich does not specifically argue that the statement is true or substantially true, asserting instead it is part of the remainder of the statement that is nonactionable opinion (Doc. 56-1 at 4-6).  Chosich's statement, however, implies the assertion of an objective fact, namely, that Plaintiff required surgery due to cocaine usage.  In other words, this purported opinion statement implies a fact that is provable as false and therefore could constitute defamation.  *See Castle Rock*, 354 S.W.3d at 241 (a so-called opinion can be the basis of a defamation claim "when the statement of opinion implies the existence of undisclosed defamatory facts.").  Accordingly, Chosich is not entitled to summary judgment on this portion of the statement in Count IV.

### 4.    Remaining statements in Count IV

The remainder of the statement comprising Count IV follows: "[h]e sits in his basement on Facebook constantly stirring up bullshit, chain smoking cigarettes. I guess he's got some extra

time on his hands for all this….."  (Doc. 48 at 16).  Chosich asserts these comments are

nonactionable opinions, and Plaintiff does not dispute his characterization of this portion of the

statement, effectively conceding.  Like some portions of the statement comprising Count II, this

portion of the statement in Count IV is most accurately characterized as fiery rhetoric or

rhetorical hyperbole.  *See Totta*, 695 S.W.3d at 204–05.  Considering the totality of the

circumstances including the common usage of the words and the broader situational context, an

ordinary reader would treat this portion of the statement as opinion.  *See id.*  Accordingly,

Chosich is entitled to summary judgment as to this portion of the statement in Count IV.

### C.  Count VI

Count VI consists of the following Facebook post authored by Chosich on May 12, 2024:

> "[Brad Jackson is a] 40 year old dude that has nothing to do then slander other
> people to stay relevant and gaslight people into doing the dirty work for him.
> It's sad and straight mentally ill behavior. I'd say get help but I'd rather him fuckin'
> drop dead. If the law doesn't catch up with him the heart attack will."

(Doc. 48 at 16).  Chosich asserts that the statement at issue in Count VI is based completely on

Chosich's opinion of Plaintiff, like the statements made against the plaintiff in *McClanahan v.*

*Anti-Defamation League*, 23-05076-CV-SW-JAM, 2023 WL 8704258 (W.D. Mo. Dec. 15,

2023).  In *McClanahan*, the court determined that the defendant's statements regarding the

plaintiff's "social media presence and views as antisemitic, white supremacist, anti-government,

and bigoted" were nonactionable statements of opinion that were a matter of individual

interpretation.  *Id*. at 5; *see also Nelsen v. S. Poverty L. Ctr.*, No. 4:18-00895-CV-RK, 2019 WL

12288374, at *5 (W.D. Mo. July 31, 2019) (statements that Plaintiff was a "neo-Nazi, anti-

immigrant, and racist are subjective characterizations that are not objectively verifiable"

rendering them non-actionable opinions).  Chosich argues that similarly, here, though Plaintiff

may be offended, the statement does not imply an assertion of objective fact, and any ordinary

reader would immediately understand the statement to be an opinion (Doc. 56-1 at 6).  Plaintiff

does not dispute Chosich's characterization of this statement and therefore concedes that this

statement is nonactionable.  Furthermore, the statements at issue in Count VI consists of "'broad,

unfocused, and wholly subjective comment[s]' that do not suggest to the ordinary reader that the

plaintiff committed a crime" and therefore, the statements are not actionable.  *See Halliburton*,

690 S.W.2d at 790.  Chosich's motion for summary judgment as to Count VI is granted.

### D.  Intentional Infliction of Emotional Distress

Chosich argues that Counts III, V, and VII for IIED are based exclusively on defamation

and therefore fail as a matter of law (Doc. 56 at 1).  Plaintiff fails to respond to or dispute

Chosich's assertions that these claims fail (*see* Doc. 70).

"In order to state an emotional distress claim, the plaintiff must plead extreme and

outrageous conduct by a defendant who intentionally or recklessly causes severe emotional

distress that results in bodily harm." *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 316 (Mo.

1993).  "Not just any wrongful conduct is a sufficient predicate for the tort.  Rather, the conduct

'must have been so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community.'" *Thomas v. Special Olympics Missouri, Inc.*, 31 S.W.3d 442, 446 (Mo. Ct. App.

2000) (quoting *Gibson v. Brewer,* 952 S.W.2d 239, 249 (Mo. banc 1997)).

"A claim for intentional infliction of emotional distress 'does not lie when the offending

conduct consists only of a defamation.'" *Couzens v. Donohue*, 854 F.3d 508, 518 (8th Cir. 2017)

(quoting *Nazeri*, 860 S.W.2d 316 (emphasis omitted)).  "As explained in *Nazeri*, this is because

damages for mental suffering are recoverable in a slander action and so any recovery for

emotional distress as an independent tort would duplicate part of the recovery for a slander

action." *Couzens v. Donohue*, No. 14-00247-CV-W-HFS, 2015 WL 13345611, at *4 (W.D. Mo. Jan. 7, 2015), *aff'd*, 854 F.3d 508 (8th Cir. 2017).

Plaintiff alleges Chosich's listed defamatory statements were "extreme and outrageous" and made with the *intent* to harm him (Doc. 48 at 17).  Notably, neither extreme or outrageous *conduct* is alleged, nor is actual bodily harm (*id.*).  Because the conduct underlying Plaintiff's IIED claims consists only of the statements alleged in the defamation claims, Plaintiff does not have viable claims of IIED.  *See Couzens*, 854 F.3d at 518.  Accordingly, the Court grants summary judgment to Chosich on Counts III, V, and VII.

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Chosich's Motion for Partial Summary Judgment (Doc. 56) is **GRANTED IN PART AND DENIED IN PART**.  Defendant Chosich is granted summary judgment on Count III, Count V, Count VI, Count VII, and the portions of Counts II and IV determined to be true, substantially true, or matters of opinion as set forth above.

A separate judgment will accompany this memorandum and order.

Dated this 10th day of February, 2026.

  /s/ Noelle C. Collins

NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE